# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

| IN RE: MCP 191 | No. 24-8028 |

## MOTION OF SECURUS TECHNOLOGIES, LLC
## TO TRANSFER TO THE FIFTH CIRCUIT

Of the four parties that filed the petitions for review the Judicial Panel on Multidistrict Litigation lottery consolidated in this Circuit, only Securus is aggrieved by the FCC's denial of petitions for reconsideration, clarification, and waiver. Each of the other parties expressly states that it is *not* aggrieved by those denials — each instead claims to be aggrieved by other decisions the FCC reached in the same order that were not yet reviewable when it filed its petition. The Court should therefore exercise its authority under 28 U.S.C. § 2112(a)(5) to transfer this case in the interest of justice to the Fifth Circuit, which is Securus' home circuit.

## BACKGROUND

In July 2024, the FCC issued an order addressing Incarcerated People's Communications Services ("IPCS") — the audio and video services that enable incarcerated persons to communicate with friends and family.[1] The FCC adopted

---

[1] *See* Report and Order, Order on Reconsideration, Clarification and Waiver, and Further Notice of Proposed Rulemaking, *Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act; Rates for Interstate Inmate Calling Services*, WC Docket Nos. 23-62 & 12-375, FCC 24-75 (rel. July 22, 2024) ("*Order*").

new regulations governing IPCS rates and IPCS providers' operations, issued a Further Notice of Proposed Rulemaking, and — as relevant here — denied petitions for reconsideration, clarification, and waiver. *See Order* ¶¶ 599-607.

Securus had filed two of those petitions. In August 2021, Securus asked the FCC to waive rules so it could offer consumer-friendly alternative pricing plans — rather than only per-minute pricing — to IPCS users.[2] And in September 2021, Securus petitioned for clarification regarding the FCC's rules governing site commissions — fees that jails and prisons charge IPCS providers like Securus and that provide funding to correctional authorities for various programs to aid the incarcerated population and to offset authorities' costs of providing communications services.[3]

In the *Order*, the FCC denied both petitions. *See Order* ¶¶ 604-607. As to the waiver petition, the FCC concluded that Securus' requests for waivers of the rules mandating per-minute calling rates were "moot" because the *Order* adopts new rules "allowing alternat[iv]e pricing plans." *Id.* ¶ 606.[4] The FCC also

---

[2] *See* Petition for Waiver, WC Docket No. 12-375 (Aug. 30, 2021) ("Waiver Pet."), https://www.fcc.gov/ecfs/document/10830227993038/1.

[3] *See* Petition for Clarification, WC Docket No. 12-375 (Sept. 17, 2021), https://www.fcc.gov/ecfs/document/1091700396003182/1.

[4] The *Order* also denies the waiver request as to 47 C.F.R. § 64.6080 "to the extent [it] would permit" "per-call and per-connection charges," because Securus "d[id] not explain why" such a waiver "is necessary." *Order* ¶ 607. But Securus'

concluded that the *Order*'s new rules "end[ing] the practice of paying site commissions" "effectively moot Securus'[] request for clarification." *Id.* ¶ 605.

On August 26, 2024, the portion of the *Order* denying Securus' petitions for clarification and waiver was published in the Federal Register.[5] The remaining portions of the *Order* — those adopting new regulations and issuing a Further Notice of Proposed Rulemaking — were not published in the Federal Register until September 20, 2024.[6]

Securus timely petitioned for review of the denials of its waiver and clarification petitions in the Fifth Circuit, its home circuit. *See* Pet. for Review, *Securus Techs., LLC v. FCC*, No. 24-60454 (5th Cir. Aug. 30, 2024). Three other parties then petitioned for review in other circuits. But each admits in its petition that it is *not* aggrieved by the FCC's denial of the reconsideration, waiver, and clarification petitions — the only part of the *Order* then published in the Federal Register. Direct Action for Rights and Equality ("DARE") states that it "does not claim to be separately aggrieved by the limited portion of the Order published on

---

alternative pricing plans did not involve per-call or per-connection charges. *See* Waiver Pet. 3-4 (describing the plans).

[5] *See* Incarcerated People's Communications Services, 89 Fed. Reg. 68,369 (Aug. 26, 2024).

[6] *See* Incarcerated People's Communications Services, 89 Fed. Reg. 77,244 (Sept. 20, 2024) ("Final Rule"); Incarcerated People's Communications Services, 89 Fed. Reg. 77,065 (Sept. 20, 2024) ("FNPRM").

3

August 26, 2024." Pet. for Review at 2, *Direct Action for Rights & Equality v. FCC*, No. 24-1814 (1st Cir. Sept. 5, 2024) ("DARE Pet."). Pennsylvania Prison Society ("PPS") states that the "one portion of the *Order* as to which PPS seeks review" — the FCC's "determination allow[ing] IPCS providers to recover certain safety and security costs in their rates" — "ha[d] not been published in the Federal Register." Pet. for Review at 2, 4, *Pa. Prison Soc'y v. FCC*, No. 24-2647 (3d Cir. Sept. 4, 2024) ("PPS Pet."). The third petitioner, Criminal Justice Reform Clinic ("CJRC"), makes a nearly identical statement. *See* Pet. for Review at 2-3, *Crim. Just. Reform Clinic v. FCC*, No. 24-5438 (9th Cir. Sept. 5, 2024) ("CJRC Pet.").

On September 16, 2024, the FCC gave notice of the petitions to the Judicial Panel on Multidistrict Litigation. The Panel then selected this Circuit through a random lottery. *See* Consolidation Order, No. 24-1814 (1st Cir. Sept. 19, 2024). On September 27, 2024, this Court opened this docket consolidating the four petitions.

## ARGUMENT

Of the four petitioners, only Securus is aggrieved by the FCC decisions reviewable when these petitions were filed. *See* 28 U.S.C. § 2344 (limiting judicial review to a "party aggrieved by the final order"); *see, e.g.*, *Matson Navigation Co. v. U.S. Dep't of Transp.*, 77 F.4th 1151, 1156-57 (D.C. Cir. 2023) (explaining that "aggrieved" incorporates "the traditional analysis for Article III standing").

4

The FCC's denials of Securus' petitions for waiver and clarification injure Securus, the injury is traceable to the denial, and the Court can redress the injury. The FCC denied the petitions as "moot" and "effectively moot" based on new rules the FCC adopted in the *Order*. *Order* ¶¶ 605-606. That is wrong. "A case becomes moot . . . only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016). "As long as the parties have a concrete interest . . . in the outcome of the litigation, the case is not moot." *Id.*

The new rule permitting alternative prices for IPCS services, rather than per-minute rates, will not take full effect until some (still unknown) future time. *See Order* ¶ 641.[7] The new rule eliminating site commissions takes effect on a "staggered basis," not fully phasing in at all prisons and jails until as late as April 1, 2026. *See id.* ¶ 587. Securus thus remains injured by the FCC's refusal to waive its still-effective per-minute pricing rule and to clarify its still-effective rules governing site commissions, and this Court can redress those injuries. Securus'

---

[7] The ordering paragraph explains that some portions of the relevant new rule, 47 C.F.R. § 64.6140, will take effect 60 days after Federal Register publication (November 19, 2024), while other portions will take effect after the Office of Management and Budget completes its Paperwork Reduction Act review. *See Order* ¶ 641; *see also* Final Rule, 89 Fed. Reg. at 77,244 (stating that portions of new § 64.6140 are "delayed indefinitely").

petitions were not moot when the FCC adopted the *Order* in July 2024, and they are not moot today.[8]

In contrast to Securus, DARE, PPS, and CJRC each admits that the FCC's denials of the petitions for reconsideration, waiver, and clarification do not aggrieve them. *See* DARE Pet. at 2; PPS Pet. at 2-4; CJRC Pet. at 2-3. Although each claims that aspects of the final rules the FCC adopted aggrieve them, they were required to wait for Federal Register publication of those rules to petition for review of them. *See Consumer Elecs. Ass'n v. FCC*, 347 F.3d 291, 296-97 (D.C. Cir. 2003) (holding that a petition for review of a rulemaking order is "premature under 28 U.S.C. § 2344" unless it is filed "after" publication in the Federal Register); *Council Tree Commc'ns, Inc. v. FCC*, 503 F.3d 284, 288 (3d Cir. 2007) (holding that petition for review filed "before . . . publi[cation] in the Federal Register" is "incurably premature").

Courts of appeals applying § 2112 have recognized that where, as here, only one petitioner challenging an agency order is aggrieved, it is proper to ignore the

---

[8] The rules the *Order* relies on to claim mootness are now subject to judicial challenge and may be stayed pending appeal or vacated after judicial review, as happened to a prior FCC IPCS order. *See* Order, *Glob. Tel*Link v. FCC*, No. 15-1461 (D.C. Cir. Mar. 7, 2016) (staying prior rules pending judicial review); *Glob. Tel*Link v. FCC*, 866 F.3d 397, 402 (D.C. Cir. 2017) (vacating prior rate caps). Securus has recently filed a petition for review of the final rules and has sought a stay pending review from the FCC.

forum choices of unaggrieved parties and to transfer the case to the forum the aggrieved party chose.

In *J.L Simmons Co. v. NLRB*, 425 F.2d 52 (7th Cir. 1970) (per curiam), the Seventh Circuit considered competing petitions for review of an NLRB decision that an employer filed in that court and the union filed in the D.C. Circuit. Because the employer filed first, the D.C. Circuit transferred the union's petition to the Seventh Circuit. *See id.* at 53-54. The NLRB, however, had ruled for the employer, so the Seventh Circuit found that its "aggrievement, if any, . . . is insignificant when compared" with the union's. *Id.* at 54-55. Therefore, the court found it "proper[]" to transfer the petitions for review to the D.C. Circuit — where "the party who is substantially aggrieved ha[d] petitioned for review." *Id.* at 55.

In *Liquor Salesmen's Union Local 2 of State of New York v. NLRB*, 664 F.2d 1200 (D.C. Cir. 1981), the D.C. Circuit faced the opposite situation — unions that had largely prevailed in separate cases before the NLRB filed first in the D.C. Circuit, while the losing employers sought to transfer the cases to the circuits in which each filed. *See id.* at 1202. The D.C. Circuit found that it "cannot be said that either union . . . was genuinely aggrieved by the Board's decision," "disregarded" the unions' first filing, and granted the employers' motions to transfer the cases to the employer's chosen circuits. *See id.* at 1206, 1209. The court noted further that "it appear[ed] from the insubstantiality of the pleadings

7

that the union filed first largely to secure a forum believed favorable to it" and described the union's petition as "a particularly egregious example of filing solely to forum-shop." *Id.* at 1206.[9]

This case is easier than *J.L. Simmons* and *Liquor Salesmen's*. While the prevailing parties before the NLRB in those cases professed to be slightly aggrieved by the agency's action, DARE, PPS, and CJRC each admits in their petitions for review that the only FCC decisions they could challenge in their petitions do *not* aggrieve them. Securus is the only aggrieved petitioner, and it chose to file in an available venue — the circuit in which it has long-maintained its principal office. *See* 28 U.S.C. § 2343. "The interest of justice favors retention of jurisdiction in the forum chosen by an aggrieved party," especially where "Congress has given him a choice." *Newsweek, Inc. v. U.S. Postal Serv.*, 652 F.2d 239, 243 (2d Cir. 1981) (per curiam) (collecting cases). The Court should therefore exercise its discretion to transfer these consolidated petitions "in the interest of justice" to the Fifth Circuit. 28 U.S.C. § 2112(a)(5).

---

[9] While *J.L. Simmons* and *Liquor Salesmen's* were decided before Congress amended § 2112 to replace the first-filed rule with a lottery, the court of appeals selected in the lottery may then transfer the consolidated proceedings "to any other court of appeals" when that is "in the interest of justice." 28 U.S.C. § 2112(a)(5). These pre-lottery cases were applying that same "interest of justice" standard. *See* 16 Edward H. Cooper, *Federal Practice and* Procedure, Wright & Miller § 3944 & n.36 (3d ed.) (citing both *J.L. Simmons* and *Liquor Salesmen's* in describing § 2112(a)(5)).

8

## CONCLUSION

The Court should transfer these consolidated cases to the Fifth Circuit.

                                              Respectfully submitted,

                                           /s/ *Scott H. Angstreich*

| | |
|---|---|
| Michael H. Pryor | Scott H. Angstreich |
| BROWNSTEIN HYATT FARBER | Justin B. Berg |
|   SCHRECK, LLP | Jordan R.G. González |
| 1155 F Street, N.W., Suite 1200 | KELLOGG, HANSEN, TODD, |
| Washington, D.C. 20004 |   FIGEL & FREDERICK, P.L.L.C. |
| (202) 389-4706 | 1615 M Street, N.W., Suite 400 |
| mpryor@bhfs.com | Washington, D.C. 20036 |
| | (202) 326-7900 |
| | sangstreich@kellogghansen.com |
| | jberg@kellogghansen.com |
| | jgonzalez@kellogghansen.com |

                                *Counsel for Securus Technologies, LLC*

September 27, 2024

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, petitioner Securus Technologies, LLC submits the following corporate disclosure statement:

Securus Technologies, LLC is wholly owned by SCRS Holding Corporation ("SCRS"). SCRS does not have publicly traded stock, and no entity having publicly traded stock owns 10% or more of SCRS. Platinum Equity Capital Partners IV, L.P. ("Platinum") is the principal investor of SCRS. Platinum does not have publicly traded stock, and no entity having publicly traded stock owns 10% or more of Platinum.

# CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Federal Rule of Appellate Procedure 32(g), that this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the portions of the motion exempted by Federal Rules of Appellate Procedure 27(d)(2) and 32(f), the motion contains 1,993 words.

I further certify that this motion complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared using Microsoft Word in a proportionally spaced typeface (Times New Roman, 14 point).

    /s/ *Scott H. Angstreich*
Scott H. Angstreich

*Counsel for Securus Technologies, LLC*

September 27, 2024

# CERTIFICATE OF SERVICE

I hereby certify that, on September 27, 2024, I caused the foregoing to be filed electronically with the Clerk of the Court through the Court's CM/ECF system and that a copy of the same will be served on all counsel of record through the Court's CM/ECF system.

/s/ *Scott H. Angstreich*
Scott H. Angstreich

*Counsel for Securus Technologies, LLC*