IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

| | |
|---|---|
| IN RE: MCP 191 | Nos. 24-8028 & 24-1860 |

**RENEWED MOTION OF SECURUS TECHNOLOGIES, LLC
TO TRANSFER TO THE FIFTH CIRCUIT**

These cases are in this Court solely because three parties filed jurisdictionally deficient petitions. But the Court need not take Securus Technologies, LLC's ("Securus") word for it: each has *admitted* to filing solely to trigger a jurisdictional lottery that would not have otherwise occurred, hoping to prevent Securus from litigating in its home forum. And this Court — correctly skeptical of those "protective" petitions — issued Show Cause Orders *sua sponte*, directing each to show why those petitions should not be dismissed for lack of jurisdiction. The Court was right — the petitions should be dismissed — and as a result the Court should transfer this case to the Fifth Circuit. Under 28 U.S.C. § 2112(a), that jurisdictional question must be answered now; the Court cannot defer it to the merits panel. Alternatively, those petitioners' admitted lack of aggrievement and forum-shopping supports transfer to the Fifth Circuit in the "interest of justice" before merits briefing begins. 28 U.S.C. § 2112(a)(5).

This Court denied Securus' prior motion to transfer this case to the Fifth Circuit "without prejudice to later revisitation of all issues bearing on venue and

potential transfer." Since then, the time to petition for review of the Federal Communications Commission's ("FCC") order has ended and all petitions filed have been (or are being) transferred to this Court. Securus, therefore, renews its motion, as this Court can now hear from all parties on "all issues bearing on venue and potential transfer."

## BACKGROUND

In July 2024, the FCC issued an order addressing Incarcerated People's Communications Services ("IPCS") — the audio and video services that enable incarcerated persons to communicate with friends and family.[1] The FCC adopted new regulations governing IPCS rates and IPCS providers' operations, issued a Further Notice of Proposed Rulemaking, and — most relevant here — denied petitions for reconsideration, clarification, and waiver. *See Order* ¶¶ 599-607.

Securus filed two of those petitions. In August 2021, Securus asked the FCC to waive rules so it could offer IPCS users consumer-friendly alternative pricing plans, rather than only per-minute pricing.[2] And in September 2021,

---

[1] *See* Report and Order, Order on Reconsideration, Clarification and Waiver, and Further Notice of Proposed Rulemaking, *Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act; Rates for Interstate Inmate Calling Services*, WC Docket Nos. 23-62 & 12-375, FCC 24-75 (rel. July 22, 2024, amended Aug. 26, 2024) ("*Order*").

[2] *See* Petition for Waiver, WC Docket No. 12-375 (Aug. 30, 2021) ("Waiver Pet."), https://www.fcc.gov/ecfs/document/10830227993038/1.

Securus petitioned for clarification regarding the FCC's rules governing the payment of site commissions — fees that jails and prisons charge IPCS providers like Securus and that provide funding to correctional authorities for various programs to aid the incarcerated population and to offset authorities' costs of providing communications services.[3]

In the *Order*, the FCC dismissed both petitions. *See Order* ¶¶ 604-607. As to the waiver petition, the FCC concluded that Securus' requests for waivers of the rules mandating per-minute calling rates were "moot" because the *Order* adopts new rules "allowing alternat[iv]e pricing plans." *Id.* ¶ 606.[4] The FCC also concluded that the *Order*'s new rules "end[ing] the practice of paying site commissions" "effectively moot Securus'[] request for clarification." *Id.* ¶ 605.

On August 26, 2024, the portion of the *Order* dismissing Securus' petitions for clarification and waiver was published in the Federal Register.[5] The remaining portions of the *Order* — those adopting new regulations and issuing a Further

---

[3] *See* Petition for Clarification, WC Docket No. 12-375 (Sept. 17, 2021) ("Clarification Pet."), https://www.fcc.gov/ecfs/document/109170039603182/1.

[4] The *Order* also denied the waiver request as to 47 C.F.R. § 64.6080 "to the extent [it] would permit" "per-call and per-connection charges," because Securus "d[id] not explain why" such a waiver "is necessary." *Order* ¶ 607. But Securus' alternative pricing plans did not involve per-call or per-connection charges. *See* Waiver Pet. 3-4 (describing the plans).

[5] *See* Incarcerated People's Communications Services, 89 Fed. Reg. 68,369 (Aug. 26, 2024).

3

Notice of Proposed Rulemaking — were not published in the Federal Register until September 20, 2024.[6]

Securus timely petitioned for review of the dismissals of its waiver and clarification petitions in the Fifth Circuit, where it has long maintained its principal office. *See* Pet. for Review, *Securus Techs., LLC v. FCC*, No. 24-60454 (5th Cir. Aug. 30, 2024). Securus expressly sought review of only the "portion of the *Order* resolving petitions for reconsideration, clarification, and waiver" that had been "published in the Federal Register" and sought as relief only a ruling that the FCC's "denials of [Securus'] clarification and waiver petitions" were unlawful. *See id.* at 1-2. Securus attached a copy of the Federal Register publication of that portion of the *Order*. Securus also "[a]ttach[ed] a copy of the order . . . to be reviewed," as local rules required. 5th Cir. L.R. 15.1(b).

Within days, three parties — Direct Action for Rights and Equality, Inc. ("DARE"), Pennsylvania Prison Society ("PPS"), and Criminal Justice Reform Clinic ("CJRC") (collectively, "Public Interest Petitioners") — filed what they called "protective" petitions for review in this Court and the Third and Ninth Circuits, respectively. In those petitions, each admitted it was *not* aggrieved by the

---

[6] *See* Incarcerated People's Communications Services, 89 Fed. Reg. 77,244 (Sept. 20, 2024) ("Final Rules"); Incarcerated People's Communications Services, 89 Fed. Reg. 77,065 (Sept. 20, 2024) ("FNPRM").

4

FCC's actions on the reconsideration, waiver, and clarification petitions — the only part of the *Order* then published in the Federal Register. DARE admitted that it "does not claim to be separately aggrieved by the limited portion of the Order published on August 26, 2024." Pet. for Review at 2, *Direct Action for Rights & Equality v. FCC*, No. 24-1814 (1st Cir. Sept. 5, 2024). PPS stated that the "one portion of the *Order* as to which PPS seeks review" — the FCC's "determination allow[ing] IPCS providers to recover certain safety and security costs in their rates" — "ha[d] not been published in the Federal Register." Pet. for Review at 2, 4, *Pa. Prison Soc'y v. FCC*, No. 24-2647 (3d Cir. Sept. 4, 2024). CJRC made a nearly identical statement. *See* Pet. for Review at 2-3, *Crim. Just. Reform Clinic v. FCC*, No. 24-5438 (9th Cir. Sept. 5, 2024).

On September 16, 2024, the FCC gave notice of the petitions to the Judicial Panel on Multidistrict Litigation. The Panel then selected this Circuit through the random lottery. *See* Consolidation Order, No. 24-1814 (1st Cir. Sept. 19, 2024). On September 27, 2024, this Court opened a docket consolidating the four petitions. Securus moved to transfer to the Fifth Circuit the same day, arguing that the Court should transfer the case in the interest of justice, given the jurisdictional defects in the Public Interest Petitioners' petitions for review.

Before Securus' transfer motion was fully briefed, this Court *sua sponte* issued Show Cause Orders to the Public Interest Petitioners. *See* Orders To Show

Cause, *In re MCP 191*, No. 24-8028 (1st Cir. Oct. 3 2024). The Court's orders noted that the "protective" petitions appeared jurisdictionally defective and directed each to show cause, by October 17, 2024, why those petitions should not be dismissed.

On October 21, 2024, this Court denied Securus' motion to transfer, stating:

> Having carefully reviewed the specific arguments petitioner offers in favor of transfer, we deny the motion, without prejudice to later revisitation of all issues bearing on venue and potential transfer.

Order at 2, *In re MCP 191*, Nos. 24-8028 *et al.* (1st Cir. Oct. 21, 2024). On November 13, 2024, the Court "reserved to the ultimate merits panel" the "issues flagged in the order[s] to show cause." Order, *In re MCP 191*, Nos. 24-8028 & 24-1814 (1st Cir. Nov. 13, 2024).

Yesterday, the last deadline for petitioning for review of any aspect of the *Order* expired. All petitions are now on file and all parties that might be affected by a transfer are identifiable. This Court thus can hear from all parties on "all issues bearing on venue and potential transfer."[7] Securus, therefore, renews its motion to transfer.

---

[7] One petition for review remains in another circuit, with a long-pending, unopposed motion to transfer to this Court. *See* Mot. To Transfer, *Fines & Fees Justice Ctr., Inc. v. FCC*, No. 24-2611 (2d Cir. Oct. 8, 2024). Securus has provided counsel for petitioner in that case a copy of this motion, so it may respond if it chooses.

6

# ARGUMENT

While 24 parties waited for the Federal Register to publish the *Order*'s Final Rules before petitioning for review, the Public Interest Petitioners jumped the gun. They filed incurably premature petitions for review, over which the Court lacks jurisdiction. That means Securus' petition was the only valid one filed within 10 days after Federal Register publication of the FCC's actions resolving reconsideration, clarification, and waiver petitions. No lottery should have occurred and transfer to the Fifth Circuit is mandatory under 28 U.S.C. § 2112(a)(1).[8] But even if the Court were not *required* to transfer these consolidated petitions to the Fifth Circuit, it should still transfer these petitions "in the interest of justice," *id.* § 2112(a)(5), given the Public Interest Petitioners' obvious forum-shopping. Finally, the Court should not return these cases to the Judicial Panel on Multidistrict Litigation to "re-do" the lottery. Nothing in § 2112 authorizes that result.

### A. Transfer Is Mandatory Because This Court Lacks Jurisdiction Over The Public Interest Petitioners' "Protective" Petitions

The Public Interest Petitioners' "protective" petitions are incurably premature and should be dismissed for lack of appellate jurisdiction. The key fact

---

[8] Pay Tel raises a further basis for mandatory transfer in its separately filed motion. *See* Pay Tel Mot. to Transfer, *In re MCP 191*, Nos. 24-8028, 24-1969 (1st Cir. Nov. 20, 2024).

here — highlighted by the Court in its *sua sponte* Show Cause Orders — is undisputed: the Public Interest Petitioners filed their "protective" petitions before the agency action they challenged was published in the Federal Register. So the petitions are "incurably premature" and the Court "lack[s] jurisdiction" over them. *Council Tree Commc'ns, Inc. v. FCC*, 503 F.3d 284, 291, 293 (3d Cir. 2007); *see also W. Union Tel. Co. v. FCC*, 773 F.2d 375, 380 (D.C. Cir. 1985) (same). The FCC agrees: "Because [the Public Interest Petitioners] filed these petitions for review before September 20, the petitions are incurably premature and should be dismissed for lack of jurisdiction." FCC's Resp. to Show Cause Orders at 6, *In re MCP 191*, No. 24-8028 (1st Cir. Oct. 17, 2024).

Nor were the Public Interest Petitioners' incurably premature petitions for review truly "protective." While courts of appeals have "admonished petitioners of the wisdom of filing protective petitions for review," that admonishment applies when petitioners have doubts about when the time for review expires, whether to file in a district court or court of appeals, or which appellate court has venue over the petitioner. *See, e.g.*, *Eagle-Picher Indus., Inc. v. EPA*, 759 F.2d 905, 912 & n.36 (D.C. Cir. 1985) (citing cases); *see also Am. Soybean Ass'n v. Regan*, 77 F.4th 873, 877 (D.C. Cir. 2023) (protective petitions filed in case "jurisdiction over those challenges properly lies in the courts of appeals rather than district court"); *Chevron U.S.A. Inc. v. EPA*, 45 F.4th 380, 384 (D.C. Cir. 2022) (protective petition

8

filed "anticipating [a] venue objection"). But the Public Interest Petitioners had no such confusion here. They knew where to file and when. But they knowingly filed too early; each said so on the face of its petition for review. There was nothing — other than the ability to forum-shop — for the Public Interest Petitioners to protect.

In responding to the Show Cause Orders, the Public Interest Petitioners asserted that their later-filed petitions for review of the Final Rules cured the jurisdictional defects in their earlier-filed petitions. Wrong. No case holds that a later-filed petition does so. That is why the D.C. Circuit has "repeatedly urged" parties who fear they may have filed an incurably premature petition to "supplement[] its premature petition with a later protective petition" over which the court does have jurisdiction. *W. Union Tel.*, 773 F.2d at 380. But such a later petition — like the ones the Public Interest Petitioners filed here — does not create "an exception to the literal application of jurisdictional timeliness requirements" or cure the prematurity of the earlier-filed petition. *Id.* at 381. The D.C. Circuit stressed then that it "kn[e]w of no decision accepting a petition that was not filed within the time limits established by the jurisdictional review statute." *Id.* Nearly 40 years later, none exists.[9]

---

[9] That is why the Public Interest Petitioners, in responding to the Show Cause Orders, cited multiple non-Hobbs Act cases and misrepresented a parenthetical as a holding. The closest they came to an on-point case was *NATA v. FCC*, 751 F.2d 207 (7th Cir. 1984) (per curiam). There, the Seventh Circuit

Finally, § 2112(a) requires the Court to resolve the question of its jurisdiction over those petitions *now*; that question cannot be deferred to the merits panel. If the Court lacks jurisdiction — and, as the FCC agrees, it does — the Public Interest Petitioners' "protective" petitions are a nullity for purposes of § 2112(a). *See Southland Mower Co. v. U.S. Consumer Prod. Safety Comm'n*, 600 F.2d 12, 13 (5th Cir. 1979) (discounting "premature" petitions in evaluating which petitions are relevant under § 2112(a)); *see also Indus. Union Dep't, AFL-CIO v. Bingham*, 570 F.2d 965, 974 n.8 (D.C. Cir. 1977) (Wilkey, J., concurring) (per curiam) (observing that, if a court "determines that its petition is invalid, it must dismiss the petition and retransfer all remaining proceedings transferred to it by other circuits to the next circuit where proceedings were instituted"). And once those petitions are eliminated from the § 2112(a) calculus, the outcome is compulsory: these cases *must* be heard in the Fifth Circuit. Only one party (Securus) filed a valid petition for review in a court of appeals (the Fifth) "within ten days after" Federal Register publication; therefore, the FCC "shall file the

---

declined to dismiss a premature petition because its own actions had "lulled NATA into thinking that it had not filed . . . prematurely." *Id.* at 209. Not so here, as this Court promptly issued Show Cause Orders identifying the jurisdictional defect. In addition, *Western Union* and later cases have rejected *NATA*, and even the Seventh Circuit has declined to follow it. *See Council Tree Commc'ns*, 503 F.3d at 290 n.4 (rejecting *NATA*).

10

record in that court" (not this one) and all cases involving the same order "shall [be] transfer[red]" to the Fifth Circuit. 28 U.S.C. § 2112(a)(1), (5).

### B. Even If The Court Concludes That Transfer Is Not Mandatory, Discretionary Transfer Is Warranted

In the alternative, the Court should exercise its authority to transfer these cases to the Fifth Circuit in the "interest of justice." 28 U.S.C. § 2112(a)(5). First, "[t]he interest of justice favors retention of jurisdiction in the forum chosen by an aggrieved party," especially where "Congress has given him a choice." *Newsweek, Inc. v. USPS*, 652 F.2d 239, 243 (2d Cir. 1981) (per curiam) (collecting cases). At the time of the lottery, only Securus even *claimed* to be aggrieved by a final agency action subject to judicial review. No one disputes that.

Securus' aggrievement is also undisputable. The FCC did not grant Securus the waiver it requested, which has prevented Securus from launching alternative pricing plans until the Final Rules take effect (at some, still unknown, future time).[10] "[D]elays in product rollouts" constitute irreparable harm, *see In re MCP No. 185*, 2024 WL 3650468, at *4 (6th Cir. Aug. 1, 2024), and so easily clear the "minimal threshold" for aggrievement, *see United Steelworkers of Am., AFL-CIO-*

---

[10] The ordering paragraph explains that, while some portions of the new rule, 47 C.F.R. § 64.6140, took effect 60 days after Federal Register publication (November 19, 2024), other portions will not take effect after the Office of Management and Budget completes its Paperwork Reduction Act review. *See* Order ¶ 641; *see also* Final Rules, 89 Fed. Reg. at 77,244 (stating that portions of new § 64.6140 are "delayed indefinitely").

11

*CLC v. Marshall*, 592 F.2d 693, 696 (3d Cir. 1979).  The FCC also refused to provide clarification on its payment obligations under its contracts, including its "current contracts,"[11] some of which remain in effect (under the Final Rules) until April 2026.  *See Order* ¶ 587.  The FCC has left Securus without guidance on how it may make site commission payments for many months to come.

      Second, courts applying § 2112(a)(5)'s "interest of justice" standard have transferred cases where, as here, only one petitioner is aggrieved, ignoring the forum choices of unaggrieved parties.  For example, in *J.L. Simmons Co. v. NLRB*, 425 F.2d 52 (7th Cir. 1970) (per curiam), the Seventh Circuit considered competing petitions for review of an NLRB decision that an employer filed in that court and the union filed in the D.C. Circuit.  Because the employer filed first, the D.C. Circuit transferred the union's petition to the Seventh Circuit.  *See id.* at 53-54.  The NLRB, however, had ruled for the employer, so the Seventh Circuit found that its "aggrievement, if any, . . . is insignificant when compared" with the union's.  *Id.* at 54-55.  Therefore, the court found it "proper[]" to transfer the petitions for review to the D.C. Circuit — where "the party who is substantially aggrieved ha[d] petitioned for review."  *Id.* at 55.

---

      [11] Clarification Pet. at 4-5 (emphasis omitted).

In *Liquor Salesmen's Union Local 2 of State of New York v. NLRB*, 664 F.2d 1200 (D.C. Cir. 1981), the D.C. Circuit faced the opposite situation — unions that had largely prevailed in separate cases before the NLRB filed first in the D.C. Circuit, while the losing employers sought to transfer the cases to the circuits in which each filed. *See id.* at 1202. The D.C. Circuit found that it "cannot be said that either union . . . was genuinely aggrieved by the Board's decision," "disregarded" the unions' first filing, and granted the employers' motions to transfer the cases to the employer's chosen circuits. *See id.* at 1206, 1209. The court also noted that "it appear[ed] from the insubstantiality of the pleadings that the union filed first largely to secure a forum believed favorable to it" and described the union's petition as "a particularly egregious example of filing solely to forum-shop." *Id.* at 1206.[12]

This case is easier than *J.L. Simmons* and *Liquor Salesmen's*. The Court need not weigh competing claims of harm, because "something, even a modest [injury], outweighs nothing every time." *Nat'l Ass'n of Retired Fed. Emps. v.*

---

[12] While *J.L. Simmons* and *Liquor Salesmen's* were decided before Congress amended § 2112 to replace the first-filed rule with a lottery, the pre-lottery cases were applying the same "interest of justice" standard that still applies today. *See* 16 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3944 & n.36 (3d ed.) (citing both *J.L. Simmons* and *Liquor Salesmen's* in describing § 2112(a)(5)).

*Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989). The interest of justice therefore favors transfer to the Fifth Circuit.

Third, the transfer is not unfair to the Public Interest Petitioners. Section 2112(a) grants no weight to the forum preferences of parties aggrieved only by later-published portions of a single agency order. Even if the staggered Federal Register publication here is unusual, it is a minor variation on a common fact pattern in which § 2112(a) properly disregards the forum preferences of some petitioners. In 2018, the FCC issued two orders — a month apart — in the same docket.[13] Only two parties petitioned for review of the first order, with the first-filed petition, in the Ninth Circuit, controlling the venue. *See* 28 U.S.C. § 2112(a)(1). The next month, that first-filing party and dozens of others petitioned for review of the second order, all of which were sent to the Tenth Circuit. That court found both FCC actions are the "same order" under § 2112(a)(5) and transferred the later-filed petitions to the Ninth Circuit over the opposition of many of those petitioners. Order at 10, *Sprint Corp. v. FCC*, No. 18-9563 (10th Cir. Jan. 10, 2019), https://bit.ly/3yVbcbL. Thus, parties aggrieved

---

[13] *See* Third Report and Order and Declaratory Ruling, *Accelerating Wireline Broadband Deployment*, 33 FCC Rcd 7705 (2018); Declaratory Ruling and Third Report and Order, *Accelerating Wireline Broadband Deployment*, 33 FCC Rcd 9088 (2018). As declaratory rulings, the time for judicial review started with FCC publication, not Federal Register publication. *See* 47 C.F.R. § 1.4(b)(1)-(2); *W. Union Tel.*, 773 F.2d at 378-80.

only by the second-published agency action had their forum preferences disregarded.[14] There is nothing unfair about the same result occurring here.

What is more, it would be unfair for the Court to privilege the Public Interest Petitioners' forum preferences over those of the 24 other parties — including 17 states, another IPCS provider, a Sheriff's association, four individual Sheriffs, and another public interest organization — that properly waited until after Federal Register publication of the Final Rules to petition for review. Penalizing the parties that followed the Hobbs Act's clear jurisdictional rules, while rewarding those that flouted them, would encourage forum-shopping in future cases.

### C. Transfer Is The Appropriate Result

The Public Interest Petitioners have at times urged this Court — if it finds its "protective" petitions incurably premature or the "interest of justice" to support transfer — to instead return these cases to the Judicial Panel on Multidistrict Litigation for a new lottery. No court has ever done that, nor does the statute contemplate re-running a lottery. To the contrary, § 2112 contemplates a single lottery per agency order, with the court selected in the lottery then determining the proper venue. *See* 28 U.S.C. § 2112(a)(5). Courts of appeals "lack common-law

---

[14] *See also Bell Atl. Tel. Cos. v. FCC*, 1996 WL 734326, at *1 (D.C. Cir. Nov. 25, 1996) (per curiam) (transferring later-filed petitions of separate, but "same," order to forum chosen for earlier-filed petitions or earlier-issued order); *MCI WorldCom, Inc. v. FCC*, 1999 WL 728373, at *1 (D.C. Cir. Aug. 2, 1999) (per curiam) (same).

authority to disregard legislation that sets rules for the conduct of litigation." *Sacramento Mun. Util. Dist. v. FERC*, 683 F.3d 769, 771 (7th Cir. 2012) (discussing § 2112(a)).

In sum, the Public Interest Petitioners had no statutory right to trigger a lottery. One happened only because the Public Interest Petitioners filed incurably premature petitions for review in which they admitted their lack of aggrievement. Re-running the lottery because the Public Interest Petitioners' first gambit failed would effectively reward their forum-shopping and encourage similar behavior.

## CONCLUSION

The Court should transfer these consolidated cases to the Fifth Circuit.

Respectfully submitted,

/s/ *Scott H. Angstreich*

| | |
|---|---|
| Michael H. Pryor<br>BROWNSTEIN HYATT FARBER<br>  SCHRECK, LLP<br>1155 F Street, N.W., Suite 1200<br>Washington, D.C. 20004<br>(202) 389-4706<br>mpryor@bhfs.com | Scott H. Angstreich<br>Justin B. Berg<br>Jordan R.G. González<br>KELLOGG, HANSEN, TODD,<br>  FIGEL & FREDERICK, P.L.L.C.<br>1615 M Street, N.W., Suite 400<br>Washington, D.C. 20036<br>(202) 326-7900<br>sangstreich@kellogghansen.com<br>jberg@kellogghansen.com<br>jgonzalez@kellogghansen.com |

*Counsel for Securus Technologies, LLC*

November 20, 2024

16

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Federal Rule of Appellate Procedure 32(g), that this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the portions of the motion exempted by Federal Rules of Appellate Procedure 27(d)(2) and 32(f), the motion contains 3,735 words.

I further certify that this motion complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared using Microsoft Word in a proportionally spaced typeface (Times New Roman, 14 point).

       /s/ *Scott H. Angstreich*
       Scott H. Angstreich

       *Counsel for Securus Technologies, LLC*

November 20, 2024

## CERTIFICATE OF SERVICE

I hereby certify that, on November 20, 2024, I caused the foregoing to be filed electronically with the Clerk of the Court through the Court's CM/ECF system and that a copy of the same will be served on all counsel of record through the Court's CM/ECF system.

/s/ *Scott H. Angstreich*
Scott H. Angstreich

*Counsel for Securus Technologies, LLC*