# United States Court of Appeals
*for the*
# First Circuit

---

Case Nos. 24-8028, 24-1860, 24-1927,
24-1969, 24-2013, 24-2061

No. 24-8028

IN RE: MCP 191.

---

No. 24-1860

SECURUS TECHNOLOGIES, LLC,

*Petitioner,*

GLOBAL TEL*LINK, d/b/a ViaPath Technologies,

*Intervenor,*

v.

FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES,

*Respondents,*

DIRECT ACTION FOR RIGHTS AND EQUALITY, INC.; PENNSYLVANIA
PRISON SOCIETY; CRIMINAL JUSTICE REFORM CLINIC; OFFICE OF
COMMUNICATION OF THE UNITED CHURCH OF CHRIST, INC.,

*Intervenors.*

---

*(For Continuation of Caption See Inside Cover)*

---

ON PETITIONS FOR REVIEW OF AN ORDER OF
THE FEDERAL COMMUNICATIONS COMMISSION

===

## INTERVENOR BRIEF OF GLOBAL TEL*LINK
## CORPORATION D/B/A VIAPATH TECHNOLOGIES

===

ANGELA F. COLLINS
CAHILL GORDON & REINDEL LLP
1990 K Street NW, Suite 950
Washington, DC 20006
(202) 862-8900

LANDIS C. BEST
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, New York 10005
(212) 701-3000

*Counsel for Global Tel*Link Corporation d/b/a ViaPath Technologies*

Dated: February 3, 2025



CP COUNSEL PRESS    (800) 4-APPEAL • (336851)

No. 24-1927

SECURUS TECHNOLOGIES, LLC,

*Petitioner,*

GLOBAL TEL*LINK, d/b/a ViaPath Technologies,

*Intervenor,*

v.

FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES,

*Respondents,*

DIRECT ACTION FOR RIGHTS AND EQUALITY, INC.; PENNSYLVANIA PRISON SOCIETY; CRIMINAL JUSTICE REFORM CLINIC; OFFICE OF COMMUNICATION OF THE UNITED CHURCH OF CHRIST, INC.,

*Intervenors.*

---

No. 24-1969

PAY TEL COMMUNICATIONS, INC.,

*Petitioner,*

GLOBAL TEL*LINK, d/b/a ViaPath Technologies,

*Intervenor,*

v.

FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES,

*Respondents,*

PENNSYLVANIA PRISON SOCIETY; DIRECT ACTION FOR RIGHTS AND EQUALITY, INC.; OFFICE OF COMMUNICATION OF THE UNITED CHURCH OF CHRIST, INC.,

*Intervenors.*

---

No. 24-2013

STATE OF INDIANA; STATE OF ARKANSAS; STATE OF ALABAMA; STATE OF FLORIDA; STATE OF GEORGIA; STATE OF IDAHO; STATE OF IOWA; STATE OF MISSOURI; STATE OF OHIO; STATE OF SOUTH CAROLINA; STATE OF SOUTH DAKOTA; STATE OF TENNESSEE; STATE OF UTAH; STATE OF VIRGINIA,

*Petitioners,*

GLOBAL TEL*LINK, d/b/a ViaPath Technologies,

*Intervenor,*

v.

FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES,

*Respondents,*

OFFICE OF COMMUNICATION OF THE UNITED CHURCH OF CHRIST,
INC.; DIRECT ACTION FOR RIGHTS AND EQUALITY, INC.;
PENNSYLVANIA PRISON SOCIETY,

*Intervenors.*

_____

No. 24-2061

STATE OF LOUISIANA; STATE OF MISSISSIPPI; STATE OF TEXAS;
SHERIFF SID GAUTREAUX; SHERIFF BOBBY WEBRE; SHERIFF MARK
WOOD; SHERIFF KEVIN COBB; LOUISIANA SHERIFFS' ASSOCIATION,

*Petitioners,*

GLOBAL TEL*LINK; NATIONAL SHERIFFS' ASSOCIATION,

*Intervenors,*

v.

FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES,

*Respondents,*

DIRECT ACTION FOR RIGHTS AND EQUALITY, INC.; OFFICE OF
COMMUNICATION OF THE UNITED CHURCH OF CHRIST, INC.;
PENNSYLVANIA PRISON SOCIETY,

*Intervenors.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Global Tel*Link Corporation d/b/a ViaPath Technologies ("ViaPath") states that it is a privately held and wholly owned subsidiary of GTEL Holdings, Inc. There is no publicly held company that owns ten percent (10%) or more of ViaPath's stock.

## TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF CONTENTS ............................................................................ ii

TABLE OF AUTHORITIES ...................................................................... iii

STATEMENT OF JURISDICTION ............................................................ 1

STATEMENT OF THE ISSUES ................................................................ 2

STATEMENT OF THE CASE ................................................................... 2

SUMMARY OF THE ARGUMENT .......................................................... 6

ARGUMENT ......................................................................................... 6

I.　　ANCILLARY SERVICE CHARGES ARE RATES AND SHOULD BE IMPLEMENTED CONCURRENTLY WITH THE OTHER REQUIRED RATE CHANGES ........................................................................... 7

II.　　CHANGES TO ANCILLARY SERVICE CHARGES REQUIRE CONTRACT AMENDMENTS SIMILAR TO THE OTHER RULE CHANGES SUBJECT TO THE STAGGERED IMPLEMENTATION DEADLINE .......................................................................... 9

CONCLUSION ...................................................................................... 12

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ii

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Board of County Commissioners of Weld County, Colorado v.
Environmental Protection Agency*,
72 F.4th 284 (D.C. Cir. 2023) ...................................................................7

*Boston Redevelopment Authority v. National Park Service*,
838 F.3d 42 (1st Cir. 2016) .....................................................................7

*Cowels v. Federal Bureau of Investigation*,
936 F.3d 62 (1st Cir. 2019) ............................................................... 6-7

*FinSight I LP v. Seaver*,
50 F.4th 226 (1st Cir. 2022) ..................................................................10

*Global Tel*Link v. FCC*,
866 F.3d 397 (D.C. Cir. 2017) ............................................................8, 9

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024) ................................................................................1

*Seavey v. Barnhart*,
276 F.3d 1 (1st Cir. 2001) .......................................................................7

*Victory Bottle Capping Machine Co. v. O. & J. Machine Co.*,
280 F. 753 (1st Cir. 1922) ....................................................................10

**Federal Communications Commission Orders:**

*BellSouth Telecommunications, LLC d/b/a AT&T Florida, Complainant v.
Florida Power & Light Company, Defendant*,
36 FCC Rcd 12602 (2021) ....................................................................11

*Express Scripts, Inc., Complainant v. AT&T Corp., Defendant*,
33 FCC Rcd 930 (2018) .......................................................................11

*Rates for Interstate Inmate Calling Services*, 36 FCC Rcd 9519 (2021) ...............11

*Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act; Rates for Interstate Inmate Calling Services*, Order Denying Stay Petition, WC Docket Nos. 23-62, 12-375, DA 24-1074 (rel. Oct. 15, 2024) .................................................................4

*Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act; Rates for Interstate Inmate Calling Services*, Report and Order, Order on Reconsideration, Clarification and Waiver, and Further Notice of Proposed Rulemaking, WC Docket Nos. 23-62, 12-375, FCC 24-75 (rel. July 22, 2024).........................................................1

*Rules and Policies Regarding Calling Number Identification Service – Caller ID*, 11 FCC Rcd 11437 (1996)...............................................12

*Telephone Number Portability*, 19 FCC Rcd 875 (2004) ...................................................................12

**Federal Statutes and Regulations:**

5 U.S.C. §§ 702-706.........................................................................1

5 U.S.C. § 706(2)(A).......................................................................2

28 U.S.C. § 2342(1) ........................................................................1

28 U.S.C. § 2344 .............................................................................1

47 U.S.C. § 151 ...............................................................................2

47 U.S.C. § 201(b) ..........................................................................8

47 U.S.C. § 276.............................................................................8, 9

47 U.S.C. § 276(b) ..........................................................................8

47 U.S.C. § 276(b)(1)(A) ................................................................8

47 U.S.C. § 402(a) ..........................................................................1

Martha Wright-Reed, Just and Reasonable Communications Act of 2022, Pub. L. No. 117-338, 136 Stat. 6156 (2023) ..................................2, 4

**Rules:**

Fed. R. App. P. 15(d) ......................................................................1

Fed. R. App. P. 26.1 ........................................................................ i

iv

**Other Authorities:**

Louisiana Public Service Commission Docket No. R-32777, *Rulemaking to Establish Rules and Regulations Specific to the Regulation of Prison Telephone Communication Systems* (April 20, 2016)..........................................10

New Mexico Public Regulation Commission, 17.11.28 NMAC, Inmate Calling Service Providers Rule (last amended Nov. 7, 2023).......................... 9-10

Oregon Senate Bill 498, Chapter 335 (Oregon Laws 2019)......................................9

## STATEMENT OF JURISDICTION

Petitioners seek review of a Federal Communications Commission ("FCC") Order[1] pursuant to 5 U.S.C. §§ 702-706, 47 U.S.C. § 402(a), and 28 U.S.C. §§ 2342(1) and 2344. Any person "adversely affected or aggrieved by agency action" may seek "judicial review thereof." 5 U.S.C. § 702. A "proceeding to enjoin, set aside, annul, or suspend" any FCC order shall be brought as "prescribed in chapter 158 of Title 28" (subject to certain exceptions not relevant here). 47 U.S.C. § 402(a). Title 28 gives federal courts of appeal "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the Federal Communications Commission made reviewable by section 402(a)." 28 U.S.C. § 2342(1). An agency's "interpretations of statutes . . . are *not* entitled to deference" and it "remains the responsibility of the court to decide whether the law means what the agency says." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 392 (2024) (internal quotations omitted) (emphasis in original). Pursuant to Federal Rule of Appellate Procedure 15(d), ViaPath has been granted intervenor status in support of Petitioners in the above-captioned cases.

---

[1]     *Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act; Rates for Interstate Inmate Calling Services*, Report and Order, Order on Reconsideration, Clarification and Waiver, and Further Notice of Proposed Rulemaking, WC Docket Nos. 23-62, 12-375, FCC 24-75 (rel. July 22, 2024) ("Order") (JA __- __).

## STATEMENT OF THE ISSUES

Whether the requirement that changes to ancillary service charges be implemented separately from and prior to the Order's other rate-related rules is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

## STATEMENT OF THE CASE

ViaPath is a leading provider of incarcerated people's communications services ("IPCS") and related software and equipment to a variety of correctional facilities across the country.  These services allow incarcerated individuals to communicate with friends and family outside the correctional facility as well as to access a suite of content, including educational, vocational, and productivity applications.  ViaPath's mission is to foster meaningful connections between incarcerated persons and their families and friends while also providing law enforcement with secure tools to create safer, more efficient correctional institutions that allow greater connectivity.

In 2022, Congress adopted the Martha Wright-Reed Just and Reasonable Communications Act of 2022 (the "MWR Act"),[2] which amended the federal Communications Act of 1934 (the "Communications Act")[3] to expand the FCC's

---

[2]    Martha Wright-Reed, Just and Reasonable Communications Act of 2022, Pub. L. No. 117-338, 136 Stat. 6156 (2023).

[3]    47 U.S.C. §§ 151, *et seq.*

authority over IPCS.  In the FCC's view, the MWR Act represented an "effort to comprehensively address unreasonably high rates and charges that incarcerated people and their families pay for communications services."  Order ¶ 5 (JA __). ViaPath strongly supports the MWR Act's goals of ensuring just and reasonable rates for IPCS consumers and fair compensation for IPCS providers.

In the Order, the FCC adopted "comprehensive reforms" to implement the MWR Act.  Order ¶¶ 2, 3, 242 (JA __, __, __); *see also id.* ¶ 590 ("given the comprehensive nature of the reforms we adopt") (JA __).  There are three main components of the FCC's "comprehensive plan ensuring just and reasonable rates and charges" for IPCS:  (1) "Lower existing per-minute rate caps for audio IPCS and establish initial interim per-minute rate caps for video IPCS;" (2) "Lower the overall prices consumers pay for IPCS and simplify the pricing structure by incorporating the costs of ancillary services in the rate caps and prohibiting providers from imposing any separate ancillary service charges on IPCS consumers;"[4] and (3) "Prohibit IPCS providers from making site commission payments for IPCS and preempt state and local laws and regulations requiring such commissions."  Order ¶¶ 3, 82 (JA __, __).  The FCC's "reforms are designed to work in concert."  *See*

---

[4]     Prior to adoption of the Order, the FCC permitted IPCS providers to separately assess five types of ancillary service charges – automated payment fees, third-party financial transaction fees, live agent fees, paper bill/statement fees, and single-call and related services fees.  Order ¶ 410 (JA __).

*Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act; Rates for Interstate Inmate Calling Services*, Order Denying Stay Petition, WC Docket Nos. 23-62, 12-375, DA 24-1074, ¶ 31 (rel. Oct. 15, 2024) ("Stay Order").

IPCS providers and their correctional facility customers enter into individually negotiated contracts for IPCS and related services, and such contracts generally are governed by state or federal competitive bidding requirements. ViaPath Comments (JA __). Given the need to "execute any contractual amendments necessary to implement" the new rules, the FCC adopted a staggered implementation period for its new comprehensive "compensation plan" based on type of correctional facility at issue, the terms of existing contracts, and any required state legislative or administrative process. Order ¶¶ 3, 5, 37, 588-91 (JA __, __, __, __-__). The FCC understood and explained that IPCS providers and their correctional facility customers would require "additional time . . . to renegotiate contracts in response to [the FCC's] actions" and "to accommodate the legislative process to amend state or local laws and regulations" that conflicted with the FCC's new compensation plan. Order ¶ 588 (JA __).

Accordingly, the FCC adopted a "staggered" implementation process for those contracts that "would require material alteration through renegotiation due to a conflict with [the FCC's] new rules involving rates, contractually prescribed site

4

commissions, or passthrough charges included in the rates." Order ¶ 587 (JA ___). The FCC determined such additional time was necessary "given the comprehensive nature of the reforms" adopted in the Order. Order ¶ 590 (JA ___). As such, these reforms were to be implemented between January 1, 2025 and April 1, 2026 depending on the size of the correctional facility, the status of the existing contract, and any necessary state legislative or administrative process. Order ¶ 587 (JA ___).

The Order described in detail the rationale for the staggered implementation process for the FCC's new rules "related to" rates and requiring contract amendments. Order ¶ 595 (JA ___). However, the FCC found a 60-day period following Federal Register publication should apply for implementation of those reforms that did not require "longer to implement due to the need for contractual amendments or municipal budget adjustments." Order ¶ 595 (JA ___). The 60-day implementation period would therefore give IPCS providers "sufficient time to implement any changes necessary to comply" with the non-rate related reforms given those changes did not involve "similar complexities such that a longer effective date period is necessary." Order ¶ 595 (JA ___); *see also id.* (noting the inactive account rule as an example of a non-rate related rule).

The new prohibition on the imposition of separate ancillary service charges was thus not subject to the same staggered implementation period as the other rate-related rule changes requiring contract amendments. The decision to subject the

required changes to ancillary service charges to the shorter 60-day implementation period when the other rate-related and contract changes are subject to a staggered and longer implementation period is arbitrary and capricious, and should be vacated.

## SUMMARY OF THE ARGUMENT

Requiring the implementation of the ancillary service charge prohibition prior to and separate from the remainder of the other rate-related reforms adopted in the Order is arbitrary and capricious. All of the FCC's comprehensive rate reforms – the prohibition on separate ancillary service charges, the new rate caps now incorporating the costs of ancillary service charges, and the prohibition on site commissions – should be subject to the staggered implementation process designed by the FCC to accommodate the contract renegotiation and potential state law amendment process. Any other interpretation conflicts with the FCC's treatment of ancillary service charges as rates, undermines the FCC's stated rationale for adopting a staggered transition period, and creates operational difficulties for IPCS providers associated with changing one of the comprehensive reform measures on a different schedule than the others.

## ARGUMENT

Subjecting the required changes to ancillary service charges to an implementation period different from the other rate-related rule changes is arbitrary and capricious and has not been sufficiently explained. *Cowels v. Federal Bureau*

6

*of Investigation*, 936 F.3d 62, 67 (1st Cir. 2019) ("An agency action is arbitrary and capricious if the agency 'relied on improper factors, failed to consider pertinent aspects of the problem, offered a rationale contradicting the evidence before it, or reached a conclusion so implausible that it cannot be attributed to a difference of opinion or the application of agency expertise.'") (quoting *Boston Redevelopment Authority v. National Park Service*, 838 F.3d 42, 47 (1st Cir. 2016)); *Seavey v. Barnhart*, 276 F.3d 1, 12 (1st Cir. 2001) (finding remand is appropriate when an agency "has provided insufficient explanation for its action").  The FCC's comprehensive compensation plan, including the prohibition on ancillary service charges, cannot function sensibly and fairly without all components of the plan taking effect at the same time.  *Board of County Commissioners of Weld County, Colorado v. Environmental Protection Agency*, 72 F.4th 284, 296 (D.C. Cir. 2023) ("If parts of a regulation are invalid and other parts are not, we set aside only the invalid parts unless the remaining ones cannot operate by themselves or unless the agency manifests an intent for the entire package to rise or fall together.").

## I.    ANCILLARY SERVICE CHARGES ARE RATES AND SHOULD BE IMPLEMENTED CONCURRENTLY WITH THE OTHER REQUIRED RATE CHANGES

The Order is clear that the "new rules involving rates" are to be implemented using the staggered timeline established by the FCC.  Order ¶ 587 (JA __).  There is no question that the prohibition on ancillary service charges involves rates and

should be subject to the same implementation period as the other rate-related rule changes.

Throughout the Order, the FCC recognizes that the prohibition on separate ancillary service charges is part and parcel of the new rate caps, which now incorporate ancillary service charge costs. *See, e.g.*, Order ¶ 408 ("the best means of discharging our mandate to establish a compensation plan that ensures both just and reasonable IPCS rates and charges, as well as fair compensation for providers is to allow recovery of the costs of ancillary services within our overall rate caps") (JA __); *see also id.* ¶ 73 ("The Commission's rules also at times use the term 'rates' in connection with ancillary service charges.") (JA __). Indeed, the FCC's authority to regulate ancillary service charges stems directly from its authority to regulate "rates" under Sections 201(b) and 276(b) of the Communications Act. 47 U.S.C. §§ 201(b), 276(b)(1)(A); *see also* Order ¶ 85 ("Apart from the statutory directives in section 276 taken as a whole that support our finding of jurisdiction over certain IPCS practices to the extent they bear on just and reasonable rates and charges, we conclude that section 201(b) provides an independent statutory basis for regulating providers' practices with regard to IPCS.") (JA __); *Global Tel*Link v. FCC*, 866 F.3d 397, 415 (D.C. Cir. 2017) (finding the FCC has authority to regulate ancillary service charges based on its authority to regulate rates under Section 201(b), which includes practices for and in connection with calls).

Treating ancillary service charges differently from "rates" is also inconsistent with the FCC's "total cost" approach to IPCS. Order ¶ 129 (JA ___); *see also id.* ¶ 73 ("The regulation of 'rates and charges' lies at the core of the Martha Wright-Reed Act, and the amendments to section 276.") (JA ___). Under that approach, the FCC incorporated the costs associated with ancillary service charges into its new rate caps and eliminated the pass-through of separate ancillary service charges by IPCS providers. Order ¶ 130 (JA ___). Such charges are "an inherent part" of providing IPCS and the "predominant means by which consumers gain access to IPCS." Order ¶ 131 (JA ___). Ancillary service charges have been and continue to be intertwined with and interdependent on IPCS rate caps. Order ¶ 131 (JA ___); *see also id.* ¶ 132 (finding "that incorporating ancillary service costs into our rate caps is the best means of . . . ensuring just and reasonable IPCS rates") (JA ___).

## II. CHANGES TO ANCILLARY SERVICE CHARGES REQUIRE CONTRACT AMENDMENTS SIMILAR TO THE OTHER RULE CHANGES SUBJECT TO THE STAGGERED IMPLEMENTATION DEADLINE

The FCC recognized that certain of its reforms "may take longer to implement due to the need for contractual amendments." Order ¶¶ 595 (JA ___).[5] Based on that

---

[5]     In addition to contract amendments, the FCC recognized that additional implementation time was necessary "to accommodate the legislative process to amend state or local laws and regulations" that conflict with the new rules adopted in the Order. Order ¶ 588 (JA ___). Numerous states have adopted legislation and/or rules governing ancillary service charges for IPCS. *See, e.g.*, Oregon Senate Bill 498, chapter 335, Oregon Laws 2019; New Mexico Public Regulation Commission,

recognition, the FCC established a staggered implementation process for IPCS providers to "execute any contractual amendments necessary" or otherwise "come into compliance with [the FCC's] reforms."  Order ¶ 589 (JA ___).

Ancillary service charges are a key component in IPCS contracts.  The majority of correctional facility contracts contain provisions setting forth the ancillary service charges to be assessed to complete IPCS calls, the per-minute rates for those calls, and the site commissions to be paid to the correctional facility.  The ancillary service charges to be assessed for communications originating from a correctional facility are part and parcel of the competitive bidding and Request for Proposal ("RFP") process.  Ancillary service charges cannot be divorced from the context of the contract as a whole.  *See, e.g.*, *FinSight I LP v. Seaver,* 50 F.4th 226, 234 (1st Cir. 2022) ("It is black letter law that contract provisions must be read as a whole, taking context into account."); *Victory Bottle Capping Machine Co. v. O. & J. Machine Co.*, 280 F. 753, 759 (1st Cir. 1922) ("A contract must be construed as a whole and the intention of the parties is to be collected from the entire instrument, and not from detached portions; it being necessary to consider all of its parts in order

---

17.11.28 NMAC, Inmate Calling Service Providers Rule (last amended Nov. 7, 2023); Louisiana Public Service Commission Docket No. R-32777, *Rulemaking to Establish Rules and Regulations Specific to the Regulation of Prison Telephone Communication Systems* (April 20, 2016).  Requiring a different implementation process for ancillary service charges ignores the Order's clear directive that additional time also may be needed to amend state laws to reflect the FCC's reforms.  Order ¶ 588 (JA ___).

to determine the meaning of every particular part as well as of the whole."); *see also Express Scripts, Inc., Complainant v. AT&T Corp., Defendant*, 33 FCC Rcd 930, ¶ 13 (2018) ("selective citation of the Agreement's terms is unpersuasive because it ignores the principle that a contract must be read as a whole"); *BellSouth Telecommunications, LLC d/b/a AT&T Florida, Complainant v. Florida Power & Light Company, Defendant*, 36 FCC Rcd 12602, ¶ 31 (2021) ("construction of the Abandonment Clause is incorrect because it reads the clause in isolation"). As the FCC has observed, the competitive bidding process for IPCS is "focused on contracts as a whole and not elements of the contracts." *Rates for Interstate Inmate Calling Services*, 36 FCC Rcd 9519, Appendix E ¶ 18 (2021). Requiring changes to ancillary service charges to be implemented separate and apart from the other necessary contractual rate changes is inconsistent with the intent of the staggered implementation process adopted in the Order to allow more time to complete contractual renegotiations and amendments. Order ¶¶ 587-88 (JA __- __).

Implementing contract changes to ancillary service charges separately from the other necessary contractual changes also imposes significant operational difficulties on IPCS providers. Ancillary service charges contained in contracts cannot be unilaterally changed by IPCS providers. The parties to the contract must engage in active renegotiations, and any agreement reached pursuant to such discussions must then be approved by the governmental body overseeing the

correctional facility. This is precisely the reason the FCC adopted the staggered implementation process – to give the parties the necessary time "to renegotiate contracts in response to [the] actions today." Order ¶ 588 (JA ___).

Taking action to "end[] ancillary service charges would require material alteration of" IPCS contracts, and involves the same "complexities" as implementation of the new rate caps and site commission changes for which the FCC granted additional implementation time. Stay Order ¶ 32; Order ¶ 595 (JA ___); *see also* Order ¶ 587 (allowing for a staggered implementation process when contracts require "material alteration through renegotiation" due to rule changes) (JA ___). There is a "practical necessity" to have a uniform implementation process for all of the changes required to IPCS contracts due to the comprehensive rate reforms adopted in the Order.[6] Stay Order ¶ 31; *see also* ViaPath Comments (JA ___).

## CONCLUSION

The Court should vacate the Order to the extent that it requires changes to ancillary service charges to occur prior to and separately from the intertwined and

_____

[6]     Technology and operational limitations within IPCS provider systems and contract management software further support uniform implementation of all of the FCC's interrelated and interdependent rate reforms pursuant to the staggered timeline for contract amendments adopted by the FCC. *See, e.g.*, *Telephone Number Portability*, 19 FCC Rcd 875, ¶¶ 7-8 (2004) (finding "special circumstances" because of "technology and operational limitations"); *Rules and Policies Regarding Calling Number Identification Service – Caller ID*, 11 FCC Rcd 11437, ¶ 7 (1996) (recognizing "that unique technical problems constitute a special circumstance").

interrelated changes to rate caps and site commissions.  Changes to ancillary service charges should occur simultaneously with other required contract modifications pursuant to the staggered schedule adopted by the FCC.

Dated:  February 3, 2025

Respectfully submitted,

*/s/ Angela F. Collins*

Landis C. Best
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
212-701-3000
lbest@cahill.com

Angela F. Collins
CAHILL GORDON & REINDEL LLP
1990 K Street, NW, Suite 950
Washington, DC 20006
202-862-8930
acollins@cahill.com

*Counsel for Global Tel\*Link Corporation d/b/a ViaPath Technologies*

13

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit, Typeface Requirements,
and Type-Style Requirements

1.      This document complies with the word limit approved by the Court in its
12/18/24 Order (3,000 words) because, excluding the parts of the document
exempted by Fed. R. App. P. 32(f):

☑      this document contains <u>2948</u> words, or

☐      this brief uses a monospaced typeface and contains _____ lines of text.

2.      This document complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☑      this document has been prepared in a proportionally spaced typeface using
<u>Microsoft Word</u> in <u>Times New Roman, 14-point</u> or

☐      this document has been prepared in a monospaced typeface using _____
with _____.

(s) <u>*Angela F. Collins*</u>
Attorney for <u>Global Tel*Link Corporation d/b/a ViaPath Technologies</u>
Dated:  <u>February 3, 2025</u>

**CERTIFICATE OF SERVICE**

I hereby certify that, on February 3, 2025, I caused a copy of the foregoing Intervenor Brief of Global Tel*Link Corporation d/b/a ViaPath Technologies to be filed electronically with the Clerk of the Court through the Court's CM/ECF system and that a copy of the same will be served on all counsel of record through the Court's CM/ECF system.

*/s/ Angela F. Collins*
Angela F. Collins
*Counsel for Global Tel*Link Corporation d/b/a ViaPath Technologies*