# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

| | |
|---|---|
| IN RE: MCP 191 | No. 24-8028 |
| DIRECT ACTION FOR RIGHTS AND EQUALITY, INC., *Petitioner*, v. FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES, *Respondents*, SECURUS TECHNOLOGIES, LLC, *Intervenor (No. 24-1884)*. | Nos. 24-1814 & 24-1884 |
| CRIMINAL JUSTICE REFORM CLINIC, *Petitioner*, v. FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES, *Respondents*, SECURUS TECHNOLOGIES, LLC, *Intervenor (No. 24-1992)*. | Nos. 24-1859 & 24-1922 |

SECURUS TECHNOLOGIES, LLC,

*Petitioner*,

GLOBAL TEL*LINK d/b/a VIAPATH TECHNOLOGIES,
*Intervenor*,

v.

FEDERAL COMMUNICATIONS COMMISSION;
UNITED STATES,

*Respondents*,

DIRECT ACTION FOR RIGHTS AND EQUALITY, INC.;
CRIMINAL JUSTICE REFORM CLINIC;
PENNSYLVANIA PRISON SOCIETY; OFFICE OF
COMMUNICATION OF THE UNITED CHURCH OF
CHRIST, INC.,

*Intervenors*.

Nos. 24-1860 &
24-1927

PENNSYLVANIA PRISON SOCIETY,

*Petitioner*,

v.

FEDERAL COMMUNICATIONS COMMISSION;
UNITED STATES,

*Respondents*,

SECURUS TECHNOLOGIES, LLC,

*Intervenor (No. 24-1886)*.

Nos. 24-1861 &
24-1886

PAY TEL COMMUNICATIONS, INC.,

*Petitioner*,

GLOBAL TEL*LINK d/b/a VIAPATH TECHNOLOGIES,
*Intervenor*,

v.

FEDERAL COMMUNICATIONS COMMISSION;
UNITED STATES,

*Respondents*,

DIRECT ACTION FOR RIGHTS AND EQUALITY, INC.;
PENNSYLVANIA PRISON SOCIETY; OFFICE OF
COMMUNICATION OF THE UNITED CHURCH OF
CHRIST, INC.,

*Intervenors*.

No. 24-1969

STATE OF INDIANA; STATE OF ARKANSAS; STATE OF
ALABAMA; STATE OF FLORIDA; STATE OF GEORGIA;
STATE OF IDAHO; STATE OF IOWA; STATE OF
MISSOURI; STATE OF OHIO; STATE OF SOUTH
CAROLINA; STATE OF SOUTH DAKOTA; STATE OF
TENNESSEE; STATE OF UTAH; STATE OF VIRGINIA,

*Petitioners*,

GLOBAL TEL*LINK d/b/a VIAPATH TECHNOLOGIES,
*Intervenor*,

v.

FEDERAL COMMUNICATIONS COMMISSION;
UNITED STATES,

*Respondents*,

DIRECT ACTION FOR RIGHTS AND EQUALITY, INC.;
PENNSYLVANIA PRISON SOCIETY; OFFICE OF
COMMUNICATION OF THE UNITED CHURCH OF
CHRIST, INC.,

*Intervenors*.

No. 24-2013

STATE OF LOUISIANA; STATE OF MISSISSIPPI; STATE OF TEXAS; SHERIFF SID GAUTREAUX; SHERIFF BOBBY WEBRE; SHERIFF MARK WOOD; SHERIFF KEVIN COBB; LOUISIANA SHERIFFS' ASSOCIATION,

*Petitioners*,

GLOBAL TEL*LINK d/b/a VIAPATH TECHNOLOGIES; NATIONAL SHERIFFS' ASSOCIATION, Intervenors,

v.

FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES,

*Respondents*,

DIRECT ACTION FOR RIGHTS AND EQUALITY, INC.; PENNSYLVANIA PRISON SOCIETY; OFFICE OF COMMUNICATION OF THE UNITED CHURCH OF CHRIST, INC.,

*Intervenors*.

No. 24-2061

## OPPOSITION OF PUBLIC INTEREST PARTIES TO RESPONDENTS' MOTION FOR ABEYANECE

Direct Action for Rights and Equality ("DARE"), Criminal Justice Reform Clinic ("CJRC"), Pennsylvania Prison Society ("PPS"), and United Church of Christ Media Justice Ministry ("UCC"; collectively, the "Public Interest Parties") oppose the eleventh-hour request of the Federal Communications Commission ("FCC" or the "Commission") and the United States to put this case into indefinite abeyance. *See* Respondents' Motion for Abeyance, Case No. 24-8028 (July 1, 2025) ("Mot."). As the Commission itself has previously informed this Court, incarcerated people have waited decades for meaningful reform to the market for incarcerated people's

1

communications services ("IPCS").  Congress expressly directed the Commission to act quickly to issue the challenged Order to combat the egregiously high rates and fees that kept incarcerated persons and their families from being able to easily communicate with one another.  Yet, in a completely unexplained about-face, and after forcefully and fully defending the lawfulness of the Order at issue in a brief filed just weeks ago under the authority of the Commission's new Chair and new General Counsel, Respondents now seek to delay—with no specified endpoint— judicial review of the Order that granted this much-needed reform.  Respondents claim only that they *might* reconsider aspects of the Order at some point in the future. This Court should not countenance this abrupt and unjustified effort to avoid judicial review at this late stage.  This case is fully briefed and ready for argument, with the Court and the parties already having invested significant time and effort in this matter.

The Commission's abeyance motion should be denied, and the Court should set the case for oral argument as soon as possible.  If the Commission will not defend its own Order, the Public Interest Parties are prepared to defend all aspects of the Order that they have not challenged.

## BACKGROUND

The Order under review—much of which had been in effect for months until Respondents' action last week—made significant reforms to the IPCS market to

2

advance incarcerated people's ability to maintain vital connections with their loved ones. *See In re Incarcerated People's Communication Services; Implementation of the Martha Wright-Reed Act*, Report and Order, Order on Reconsideration, Clarification and Waiver, and Further Notice of Proposed Rulemaking, 39 FCC Rcd 7647 (2024) ("Order") (JA1486). It is well-established that a "lack of external communications" can give rise to a "decline in mental and emotional health" among incarcerated people, and "studies have repeatedly shown that increased communication between incarcerated people and their families, friends, and other outside resources helps reduce recidivism rates." Order, 39 FCC Rcd at 8107 (JA1946) (Statement of Commissioner Carr).

Nonetheless, for decades, IPCS providers imposed predatory rates for communications services that greatly exceeded the reasonable costs of providing those services. They did so because incarcerated people and their families had no choice but to use the provider serving their facilities.[1] To be selected as a monopoly

---

[1] As now-Chairman Carr explained, "The excessive rates Martha Wright-Reed sought to reform flowed from a market failure. The market for inmate calling services does not benefit from the same type of competitive forces that we see in other segments of the telecom ecosystem. As a result, the FCC has had a critical role to play in regulating certain aspects of this marketplace, and it has taken actions to address providers' practices over the years. A big part of enabling this is ensuring that IPCS providers are limited to charging just and reasonable rates for inmate calling services." Order, 39 FCC Rcd at 8107 (JA1946) (Statement of Commissioner Brendan Carr).

provider, these companies also paid "site commissions" to prisons and jails, and then passed along the cost of these site commissions to incarcerated people and their families. The Commission has tried for years for address these issues, but its previous efforts were thwarted by the D.C. Circuit's narrow construction of the Commission's statutory authority, *see Global Tel\*Link v. FCC*, 866 F.3d 397 (D.C. Cir. 2017), and resistance from IPCS providers to adopt necessary reforms.

In January 2023, Congress stepped in and passed the Martha Wright-Reed Just and Reasonable Communications Act of 2022. *See* Pub. L. No. 117-338, 136 Stat. 6156 (2023) (the "Act"). The Act provided the Commission with new statutory authority to address distortions in the IPCS market, including expanded authority to ensure "just and reasonable" IPCS rates, and it expressly limited the safety and security costs that could be included in the rate caps to those that were "necessary to provide" IPCS. Act § 3(b)(2). Congress also recognized the urgent need for reform. It therefore directed that "not later than 24 months after the date of enactment of this Act, the [Commission] shall promulgate any regulations necessary to implement this Act and the amendments made by this Act." Act § 3(a).

Pursuant to the Commission's new authority, the Order adopted long-overdue changes, relying on the well-tested "used and useful" methodology the Commission has used in other contexts to set just and reasonable rates; halving the per-minute rate caps for audio communications services; eliminating duplicative and abusive

ancillary fees; limiting the "safety and security" costs that could be included in the calculation of the new rate caps to those that serve the paying consumer; prohibiting site commissions; and adopting numerous other consumer protection measures to prevent IPCS providers from misleading consumers (such as mandating transparency in pricing and bills). *See, e.g.*, Order ¶ 3 (JA1488-89).

The rules adopted in the Order, with few exceptions, took effect on November 19, 2024, 60 days after publication in the Federal Register. *See id.* ¶ 587 (JA1789). The Commission's rules ending ancillary fees and requiring transparent billing went into effect at that time. 47 C.F.R §§ 64.6020, 64.6110. The Commission, however, adopted narrow and carefully calibrated staggered deadlines for a limited group of IPCS providers to comply with its new rate cap rules and its prohibition against site commissions. 47 C.F.R. § 64.6010(d).[2] The Commission (and this Court) previously denied multiple provider requests for stays of these deadlines. *See, e.g.*, Order of Court, Case No. 24-8028 (Nov. 18, 2024) (denying Securus stay); Order of Court,

---

[2] Unless their existing contracts did not include change-of-law provisions or a site commission was legally mandated, providers serving prisons and the largest jails were required to comply on January 1, 2025, and providers serving all other facilities were required to comply by April 1, 2025. Providers serving jurisdictions with legally mandated site commissions were required to comply on July 1, 2025. Providers whose contracts omitted change-of-law provisions received an extra year to comply, to January 1, 2026, for contracts with prisons and the largest jails, and April 1, 2026, for contract with all other facilities. 47 C.F.R. § 64.6010(d); Order ¶ 587 n.2085 (JA1790).

Case No. 24-8028 (Nov. 18, 2024) (denying Pay Tel stay), *Order Denying Stay Petition*, 39 FCC Rcd 10944 ¶ 1 (2024) (JA1953); *Order Denying Stay Petition*, 39 FCC Rcd 11373 ¶ 1 (2024) (JA1972).  As the Commission explained in opposing a stay at that time, "Congress directed the FCC to change a 'broken system' under which incarcerated people and their families have for too long paid 'exorbitant rates' for the benefit of IPCS providers and correctional facilities," and "[t]here is no cause to maintain that system pending judicial review."  FCC Opp. to Pay Tel Stay Request at 24, Case No. 24-8028 (Nov. 7, 2024) (quoting Cong. Rec. H.10027-28 (daily ed. Dec. 22, 2022)).

In August and September 2024, IPCS providers, correctional facilities, and organizations representing the interests of incarcerated people and their families sought judicial review of the Order, and the various petitions were consolidated in this Court.[3]  Over the past six months, the parties have fully briefed this case in accordance with this Court's briefing schedule—including a brief filed by the Commission under its current Chair and General Counsel in April 2025 fully defending the Order in every respect.  The parties submitted their final briefs last month, and the case was set to be scheduled for oral argument.

---

[3] DARE, CJRC, and PSS have also challenged the Order for not going far enough in certain respects.

Then, on June 30, 2025, *at the request of no party before the agency*, the Commission's Wireline Competition Bureau issued an order that temporarily waived the Order's deadlines to comply with the rate cap, site commission, and per-minute pricing rules in the Order until April 1, 2027, or until an "alternative date" set by the Commission. *Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act*, WC Docket Nos. 23-62, 12-375, DA-25-565 ¶ 1 (WCB rel. June 30, 2025) ("Delay Order"). The Delay Order's waiver extended these deadlines, for all providers, for a full year longer than Securus, an IPCS provider, had even requested with respect to its own individual waiver. The Bureau claimed to have reached that conclusion after it was "made aware of *potential* consequences of the new rules." *Id.* ¶ 4 (emphasis added).

The Delay Order also cited claims in (but did not grant) a petition for reconsideration filed by NCIC Inmate Communications *nine months ago* that questioned the Commission's determinations regarding five categories of safety and security costs, the prohibition of site commissions, and other matters. *Id.* ¶ 4 (citing Petition for Reconsideration of NCIC Inmate Communications, WC Docket Nos. 23-62, 12-375, at 1 (filed Oct. 21, 2024)). And the Bureau similarly cited filings submitted in response to a Further Notice issued simultaneously with the Order under review, which sought comment on "whether and how to disaggregate the very small jail tier, whether to adopt an additive to account for correctional facility costs,

and the effect of the new rules on small entities." *Id.* Finally, the Delay Order also vaguely stated that the Commission is "assess[ing] whether to take further action[,] … including reconsidering critical aspects of the [Order]." *Id.* ¶ 1.

The next day, the Commission filed its abeyance motion in this Court. The Commission argued that abeyance would purportedly promote "judicial economy" and that the Delay Order shows that the Commission may change the rules in a manner that "*may* … partly or entirely moot[]" the arguments before the Court. Mot. 6-7 (emphasis added). The Commission therefore requested that this Court hold this case indefinitely, subject to status reports filed at 90-day intervals "to keep the Court and the parties apprised of future developments in the agency's rulemaking docket." *Id.* at 7.

## ARGUMENT

The Court should reject the Commission's last-minute attempt to avoid judicial review based on nothing more than speculation about whether the Commission may change parts of the Order at some unspecified point in the future. Abeyance is inappropriate because it will not serve judicial economy; because some portions of the Order under review are final with no pending request before the Commission; because this Court retains jurisdiction; because any Commission review underway will benefit from a ruling on the merits here; and because this

Court should not condone the Commission sudden and unjustified attempt to circumvent this Court's review.

*First*, the Commission's request for indefinite delay, Mot. 6, is based on entirely speculative reasoning. The Commission has promised no action by any discrete date nor pointed to newly identified facts triggering its sudden reversal. According to the Commission, the Delay Order "shows that the Commission is actively considering whether to change the rules at issue in this litigation." Mot. 5. But all the Delay Order says is that the Commission is "*assess[ing] whether* to take further action." Delay Order ¶ 1 (emphasis added); *see also id.* ¶ 22 (vaguely alluding to potential "further action in this proceeding"). The Commission's motion does not provide any additional details, simply asserting that "future FCC action *may* narrow, alter, or moot" this case, Mot. 2, and stating that "[*i*]f these rules change, the arguments now before the Court *may be* partly or entirely mooted," *id.* at 7. These truisms could equally be said in any case, and they do not provide the Court with any specifics justifying abeyance here. Indeed, in analogous circumstances where the Commission relied on theoretical developments that could affect a pending case, the Fifth Circuit denied the Commission's motion. *See* Order, *Molak v. FCC*, No. 23-60641 (5th Cir. Oct. 18, 2024), Dkt. 155 (denying motion for abeyance where the Commission argued that the Supreme Court's grant of certiorari in a tangentially related case could affect the disposition of the case before it).

9

Moreover, it is far too late for the Commission to claim an interest in conserving judicial resources. Various motions have been filed and decided, and the case is already fully briefed. If the Commission had truly wanted to conserve judicial resources, it would have sought abeyance before briefing in this case commenced, or at least before it filed its 22,000-word brief fully and forcefully defending the Order in April of this year. And seeking abeyance now based on a purported desire to develop a more robust record makes little sense. As the Commission recognizes, the effort to develop a "more robust record" has been ongoing since the moment the Order was issued because the Commission simultaneously issued a Further Notice. Mot. 3-4, 6 (quoting Delay Order ¶ 18). If the mere development of a more robust record alone sufficed for abeyance, that would have justified delaying review from the moment the Order was released.

In addition, the record in response to the Further Notice was complete on November 19, 2024, and the Commission had many of the filings cited in the Delay Order in hand when it filed its brief supporting the Order in full. And even the provider filings submitted three days before issuance of the Delay Order offered no indication of a sudden change in factual circumstance. *See* Letter from Michael S. J. Lozich, Associate General Counsel, Regulatory Affairs, Securus Technologies, LLC to Marlene H. Dortch, Secretary, FCC, WC Docket Nos. 23-62 and 12-375 (June 27, 2025), https://www.fcc.gov/ecfs/document/10627211908329/1. Nothing

has meaningfully changed since the Commission filed its brief that remotely justifies the Commission's sudden about-face.

Similarly, the Commission cannot now suggest that abeyance is warranted because some parties sought reconsideration before the agency in October 2024. *Cf.* Mot. 4 (citing NCIC Correctional Services' petition for reconsideration). If those filings warranted a delay in the litigation, the Commission could have sought such a delay well in advance of now. And though the case the Commission primarily relies on recognized that courts can grant petitions for abeyance where some parties have sought judicial review and others have sought agency reconsideration, it explained in the same breath that "this practice is not an iron-clad rule." *Teledesic v. FCC*, 275 F.3d 75, 83 (D.C. Cir. 2001). Indeed, in that very case, the Court declined the Commission's abeyance request, *id.*, and it should do the same here. [4]

---

[4] The Commission also references inapposite examples of abeyance in the context of individual immigration adjudications. *See* Mot. 6 (citing *Atieh v. Riordan*, 727 F.3d 73, 75 (1st Cir. 2013); *Pereira v. Garland*, No. 23-1209, 2023 WL 8825104, at *1 (1st Cir. Dec. 18, 2023)). *Atieh* involved a situation where further relief was sought on the petitioner's behalf while the petition for review in this Court was pending, *see* 727 F.3d at 75, and *Pereira* involved a voluntary remand for further agency consideration, 2023 WL 8825104, at *1. Neither involved the kind of complex rulemaking proceeding at issue here. Rather, the D.C. Circuit has squarely concluded in this context that pending petitions for reconsideration before the Commission do not require holding the petitions for review in abeyance. *See MCI Telecomms. Corp. v. FCC*, 143 F.3d 606, 608 (D.C. Cir. 1998).

*Second*, the Commission has not explained how it can imminently reconsider issues that are already final because they are not subject to a petition for reconsideration nor a further notice of proposed rulemaking. For example, no party has sought reconsideration of the Commission's ban on ancillary fees, and only the timing of that ban is under review by this Court. As for the Further Notice, the agency's contemplated rulemaking was limited to only the smallest jails, not to the full range of facilities served by providers. And no provider sought the broad waiver rendered in the Delay Order. Indeed, in the Securus filing cited by the Commission, Securus stated it would only be seeking an extension of its *existing* waiver—and only until April 1, 2026. *See* Letter from Michael H. Pryor, Counsel for Securus Technologies, LLC, to Marlene H. Dortch, Secretary, FCC, at 1, WC Docket Nos. 23-62 and 12-375 (June 23, 2025), https://www.fcc.gov/ecfs/document/1062351867938/2. It would therefore appear that the Commission will have to promulgate a new notice of proposed rulemaking just to evaluate many or most of the changes it might wish to consider, a process that would likely take, at the least, many months.

*Third*, the Commission does not dispute this Court's jurisdiction or claim that the Delay Order has mooted any aspect of this case. Nor could it: the Delay Order only "temporarily waive[s]" the prior deadlines with respect to certain aspects of the Order. Delay Order ¶¶ 6, 22. Though not before the Court, the Delay Order is

12

plainly arbitrary and capricious in numerous respects: it waives the deadlines for one year longer than Securus even requested from the agency; waives the deadlines for *all* providers, including those who did not even ask for any relief, *see* Delay Order ¶ 6; justifies this radical action based almost entirely on a handful of self-serving comments from providers and facilities; identifies only a single instance of a facility actually ending access to IPCS, *id.* ¶ 16; and ignores the harms to incarcerated people who may now pay twice as much as they were paying under the Order's rate caps, *id.* ¶¶ 16-17. The Delay Order's extension is wholly unwarranted, and it comes at severe cost to IPCS consumers. But, as the Commission does not dispute, the Delay Order does not itself moot this Court's consideration of the Order's substantive provisions.

And though the Commission alludes to various petitions for reconsideration that were filed before the agency last fall, Mot. 1-2, it is well-settled that the "fact that parties other than [Petitioners] petitioned the FCC for reconsideration of the [Order] does not deprive the court of jurisdiction." *Teledesic*, 275 F.3d at 82; *see generally Wrather-Alvarez Broad., Inc. v. FCC*, 248 F.2d 646, 649 (D.C. Cir. 1957) (recognizing that parties "have their choice whether to seek relief from Commission action from the Commission itself or from the court"). Thus, there is "no reason for the court to delay deciding the issues now before [it]," which "present[] a concrete legal issue" and remains "ripe for judicial review." *MCI*, 143 F.3d at 608.

13

*Fourth*, this Court's resolution of the live dispute would also aid any future action by the Commission. This case involves a newly enacted statute that provides the Commission with broader statutory authority. No other court has interpreted that authority, so this Court's construction would only be to the Commission's benefit. Similarly, no court has reviewed whether the statute authorizes the Commission to apply its longstanding "used and useful" methodology to set "just and reasonable" rates. What this Court says about the "reasonableness of the methodology used" will guide the Commission in any future action it takes. *MCI*, 143 F.3d at 608; *see also id.* (declining to delay judicial review where "resolution of the petitions for reconsideration will benefit from a resolution of the present case"). This is true both as to the arguments advanced by the Public Interest Parties as intervenors in support of the Commission's Order, and as to DARE, CJRC, and PPS' contentions as Petitioners challenging the Order. Favorable resolution of those petitions for review, too, could bear on how the agency may resolve the issues it may reconsider.

*Fifth*, the Court should not condone the Commission's last-minute change in tactics on the eve of oral argument. The parties have expended substantial effort and resources briefing this case, and motions panels of this Court have already invested time in addressing several stay motions and motion to transfer.

In an attempt to justify its reversal, the Commission alludes to the change in Administration, Mot. 4, but the Commission filed its brief fully defending the Order

in April 2025 under its current Chair and current General Counsel, and changes in the composition of the Commission cannot support abeyance without any concrete indication that the agency is in fact changing the Order's substantive rules. It bears emphasis that neither of the two current Commissioners who voted on the Order dissented.[5] In any case, courts have also previously denied the Commission's request for abeyance premised on "allow[ing] the newly constituted Commission an opportunity to determine how it plans to proceed." Mot. of FCC for Abeyance, *City of Eugene v. FCC*, No. 19-4161, at 1 (6th Cir. 2021), Dkt. 71.[6] And the Commission's suggestion that abeyance is appropriate because "only one" of the Commission's "three sitting members" "voted to approve the [Order] in full," Mot. 4, is an arbitrary and obviously overbroad rule that would insulate a whole swath of agency action from prompt judicial review.

Finally, the Court certainly should not agree to the Commission's request for indefinite abeyance with no specified end point. That request flies in the face of Congress' clear instruction to promptly promulgate rules implementing the Act, and it creates the very real risk of a lengthy agency delay that effectively nullifies the

---

[5] Chairman Carr voted to approve in part and concur in part. He did not dissent, *see* JA1947, and the Commission vote was unanimous.

[6] More broadly, the D.C. Circuit has recently denied several agency motions for abeyance premised only on the change in Administration. *See, e.g.*, Order, *IGas Holdings, Inc. v. EPA*, No. 23-1261 (D.C. Cir. Feb. 13, 2025); Order, *Utah v. EPA*, No. 23-1157 (D.C. Cir. Feb. 21, 2025).

specific statutory deadline for promulgation of rules implementing the Act.  *See, e.g.*, *In re Core Commc'ns, Inc.*, 531 F.3d 849, 850 (D.C. Cir. 2008) (granting writ of mandamus in light of six-year delay by the Commission in acting).  And indefinite abeyance is especially inappropriate given the equities at stake.  The Commission's unbounded request for additional time provides no reassurance to the families and loved ones who have already relied on the Commission's new rules and have already endured a decades-long delay in achieving meaningful reform.

## CONCLUSION

The FCC's abeyance motion should be denied, and the Court should set this case for oral argument as soon as possible.

Dated: July 9, 2025

Respectfully submitted,

*/s/Andrew Jay Schwartzman*
Andrew Jay Schwartzman
525 Ninth Street, NW, Seventh Floor
Washington, DC 20004
Telephone: (202) 241-2408
andyschwartzman@gmail.com

*Counsel for Pennsylvania Prison Society*

*/s/Erik Stallman*
Erik Stallman
Samuelson Law, Technology &
  Public Policy Clinic
UC Berkeley School of Law
353 Law Building
Berkeley, CA 94720
Telephone: (510) 642-2485
estallman@clinical.law.berkeley.edu

*Counsel for United Church of Christ Media Justice Ministry, Inc.*

*/s/Jessica Ring Amunson*
Jessica Ring Amunson
Arjun R. Ramamurti
Andrew C. DeGuglielmo
Ruby C. Giaquinto
Jenner & Block LLP
1099 New York Avenue NW, #900
Washington, DC 20001
Telephone: (202) 639-6000
jamunson@jenner.com

*Counsel for Direct Action for Rights and Equality*

*/s/Amy E. Potter*
Amy E. Potter
Angeli & Calfo LLC
121 SW Morrison Street, Suite 400
Portland, OR 97204
Telephone: (503) 954-2232
amy@angelicalfo.com

*Counsel for Criminal Justice Reform Clinic*

17

## CERTIFICATE OF COMPLIANCE

Under Rule 27(d)(2)(A) of the Federal Rules of Appellate Procedure, I certify this Response complies with the length limits set forth Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 3,723 words, as counted by Microsoft Word, excluding the items that may be exempted under Federal Rule of Appellate Procedure 27(a)(2)(B).

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in 14-point Times New Roman font.

*/s/ Jessica Ring Amunson*
Jessica Ring Amunson

**CERTIFICATE OF SERVICE**

I hereby certify that on July 9, 2025, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Jessica Ring Amunson*
Jessica Ring Amunson