# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

| | |
|---|---|
| IN RE: MCP 191 | No. 24-8028 |
| DIRECT ACTION FOR RIGHTS AND EQUALITY, INC., <br> *Petitioner*, <br> v. <br> FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES, <br> *Respondents*, <br> SECURUS TECHNOLOGIES, LLC, <br> *Intervenor (No. 24-1884)*. | Nos. 24-1814 & 24-1884 |
| CRIMINAL JUSTICE REFORM CLINIC, <br> *Petitioner*, <br> v. <br> FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES, <br> *Respondents*, <br> SECURUS TECHNOLOGIES, LLC, <br> *Intervenor (No. 24-1922)*. | Nos. 24-1859 & 24-1922 |

SECURUS TECHNOLOGIES, LLC,

 *Petitioner*,

GLOBAL TEL*LINK d/b/a VIAPATH TECHNOLOGIES,

 *Intervenor*,

   v.

FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES,

 *Respondents*,

DIRECT ACTION FOR RIGHTS AND EQUALITY, INC.; CRIMINAL JUSTICE REFORM CLINIC; PENNSYLVANIA PRISON SOCIETY; OFFICE OF COMMUNICATION OF THE UNITED CHURCH OF CHRIST, INC.,

 *Intervenors*.

Nos. 24-1860 & 24-1927

---

PENNSYLVANIA PRISON SOCIETY,

 *Petitioner*,

   v.

FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES,

 *Respondents*,

SECURUS TECHNOLOGIES, LLC,

 *Intervenor (No. 24-1886)*.

Nos. 24-1861 & 24-1886

| | |
|---|---|
| PAY TEL COMMUNICATIONS, INC., <br><br>    *Petitioner*, <br><br>GLOBAL TEL*LINK d/b/a VIAPATH TECHNOLOGIES, <br><br>    *Intervenor*, <br><br>         v. <br><br>FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES, <br><br>    *Respondents*, <br><br>DIRECT ACTION FOR RIGHTS AND EQUALITY, INC.; PENNSYLVANIA PRISON SOCIETY; OFFICE OF COMMUNICATION OF THE UNITED CHURCH OF CHRIST, INC. <br><br>    *Intervenors*. | No. 24-1969 |
| STATE OF INDIANA; STATE OF ARKANSAS; STATE OF ALABAMA; STATE OF FLORIDA; STATE OF GEORGIA; STATE OF IDAHO; STATE OF IOWA; STATE OF MISSOURI; STATE OF OHIO; STATE OF SOUTH CAROLINA; STATE OF SOUTH DAKOTA; STATE OF TENNESSEE; STATE OF UTAH; STATE OF VIRGINIA, <br><br>    *Petitioners*, <br><br>GLOBAL TEL*LINK d/b/a VIAPATH TECHNOLOGIES, <br><br>    *Intervenor*, <br><br>         v. <br><br>FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES, <br><br>    *Respondents*, <br><br>DIRECT ACTION FOR RIGHTS AND EQUALITY, INC.; PENNSYLVANIA PRISON SOCIETY; OFFICE OF COMMUNICATION OF THE UNITED CHURCH OF CHRIST, INC., <br><br>    *Intervenors*. | No. 24-2013 |

| | |
|---|---|
| STATE OF LOUISIANA; STATE OF MISSISSIPPI; STATE OF TEXAS; SHERIFF SID GAUTREAUX; SHERIFF BOBBY WEBRE; SHERIFF MARK WOOD; SHERIFF KEVIN COBB; LOUISIANA SHERIFFS' ASSOCIATION, *Petitioners*, GLOBAL TEL*LINK d/b/a VIAPATH TECHNOLOGIES; NATIONAL SHERIFFS' ASSOCIATION, *Intervenors*, v. FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES, *Respondents*, DIRECT ACTION FOR RIGHTS AND EQUALITY, INC.; PENNSYLVANIA PRISON SOCIETY; OFFICE OF COMMUNICATION OF THE UNITED CHURCH OF CHRIST, INC. *Intervenors*. | No. 24-2061 |

**RESPONSE OF SECURUS TECHNOLOGIES, LLC, PAY TEL COMMUNICATIONS, INC., GLOBAL TEL*LINK CORPORATION d/b/a VIAPATH TECHNOLOGIES, AND NATIONAL SHERIFFS' ASSOCIATION IN SUPPORT OF RESPONDENTS' MOTION FOR ABEYANCE**

The Federal Communications Commission ("FCC") recently started the process of reevaluating the same *2024 IPCS Order*[1] that is before this Court. As a first step in that process, the FCC waived the deadlines for complying with the new

---

[1] Report and Order, Order on Reconsideration, Clarification and Waiver, and Further Notice of Proposed Rulemaking, *Incarcerated People's Communications Services*, WC Docket Nos. 23-62, 12-375, FCC 24-75 (rel. July 22, 2024, amended Aug. 26, 2024 and Oct. 2, 2024) ("*2024 IPCS Order*") (JA1486-949 (public); JA2091-581 (sealed); JA1951-52 (second errata)).

rate caps, the prohibition on site commissions, and the requirement for per-minute video pricing adopted in that order for two years, until April 1, 2027.  In these circumstances, it is appropriate — as Respondents request — for the Court to hold in abeyance the pending petitions for review of the *2024 IPCS Order*.

## BACKGROUND

This case arises from the FCC's *2024 IPCS Order*, which adopts new rules for audio and video communications services used in prisons and jails, known as Incarcerated People's Communications Services ("IPCS").  Petitioners Securus Technologies, LLC ("Securus") and Pay Tel Communications, Inc. ("Pay Tel"), and intervenor Global Tel*Link Corporation d/b/a ViaPath Technologies ("ViaPath") provide IPCS services.  Intervenor National Sheriffs' Association ("NSA") represents more than three thousand sheriffs across the country, who in turn operate approximately 80 percent of the country's jails.

Securus, Pay Tel, ViaPath, and NSA all support the legislation that preceded the *2024 IPCS Order* — the Martha Wright-Reed Just and Reasonable Communications Act of 2022 ("MWR Act").  If implemented appropriately, the MWR Act promises to make IPCS more accessible, affordable, and sustainable, while also funding the safety and security measures necessary for IPCS and fairly compensating providers.  But, as then-Commissioner (now-Chairman) Carr recognized, in implementing the MWR Act, the FCC went "too far in one

2

direction" and "overcorrected in ways that could ultimately work against the interests of inmates, their families, IPCS providers, state correctional facilities, and the public-safety officials who operate them." *2024 IPCS Order* at 486 (JA2576).

That concern proved prescient: correctional authorities and IPCS providers have had to cease providing IPCS in several facilities due to the *2024 IPCS Order*. One facility has publicly stated it will stop providing IPCS due to the requirements of the *2024 IPCS Order*. *See* Securus Ex Parte Letter, WC Docket Nos. 23-62 & 12-375, at 1 & n.3 (June 27, 2025). Pay Tel has been forced to cease providing IPCS to four small jails in Arizona and New Mexico, where offering IPCS is no longer economically viable. *See id.* at 1-2. Securus similarly has been forced to cease its IPCS services to three smaller facilities. *See id.* at 2.

In addition, the *2024 IPCS Order* set unworkable compliance deadlines. The FCC has found good cause to grant waivers to Securus and one other IPCS provider, each of which demonstrated its inability to comply with the *2024 IPCS Order*'s per-minute billing requirements for video IPCS by the deadline, despite best efforts.[2] Moreover, IPCS providers, governmental officials, and correctional

---

[2] *See* Order, *Incarcerated People's Communications Services*, WC Docket Nos. 23-62 & 12-375, DA 25-515 (Wireline Comp. Bur. rel. June 13, 2025); Order, *Incarcerated People's Communications Services*, Nos. 23-62 & 12-375, DA 24-1277 (Wireline Comp. Bur. rel. Dec. 19, 2024).

3

officials are still renegotiating their IPCS-related contracts, and those negotiations are taking longer than the FCC envisioned in its *2024 IPCS Order*. *See id.* at 2-3.

In light of these and other issues, the FCC's Wireline Competition Bureau issued an order "waiv[ing] the deadlines for complying" with three regulations adopted in the *2024 IPCS Order*: the rule setting new rate caps, the rule prohibiting site commissions, and the rule requiring per-minute pricing. *Waiver Order*[3] ¶ 1.[4] Taking stock of the more developed record, the Bureau explained that the *2024 IPCS Order* had imposed "implementation challenges and safety and security risks greatly exceeding those the Commission envisioned." *Waiver Order* ¶ 5. Citing the "unanticipated and ongoing challenges" associated with providing "safe and secure access to IPCS while implementing the rate cap, site commission, and per-minute pricing rules adopted in the *2024 IPCS Order*," the Bureau found good cause to waive those compliance deadlines. *Id.* ¶ 7. As a result of the waiver, the industry will continue operating under the 2021 interim rate caps that

---

[3] Order, *Incarcerated People's Communications Services*, WC Docket Nos. 23-62 & 12-375, DA 25-565 (Wireline Comp. Bur. rel. June 30, 2025) ("*Waiver Order*").

[4] The Bureau did not waive other deadlines, including for the new rule banning separate charges for ancillary services. *See Waiver Order* ¶¶ 19-20. A petition for reconsideration regarding both that deadline and the prohibition on separate charges is pending before the FCC. *See* HomeWAV, LLC Petition for Reconsideration and/or Clarification, *Incarcerated People's Communications Services*, WC Docket Nos. 23-62 & 12-375 (Oct. 21, 2024).

4

the FCC found set just and reasonable rates. *Id.* ¶ 19 n.57; *2021 IPCS Order*[5] ¶ 28. During the two years while those deadlines are waived, the FCC intends to "reevaluate its IPCS rules." *Waiver Order* ¶ 1.

## ARGUMENT

When an agency decides to reconsider a challenged rule, appellate courts regularly hold legal challenges "in abeyance pending reconsideration." *Sierra Club v. EPA*, 551 F.3d 1019, 1023 (D.C. Cir. 2008); *see also Pereira v. Garland*, 2023 WL 8825104, at *1 (1st Cir. Dec. 18, 2023) (holding case in abeyance pending Board of Immigration Appeals proceedings). Doing so is consistent with "the interests of judicial economy," *Craker v. DEA*, 714 F.3d 17, 25 (1st Cir. 2013), as well as a "cardinal virtue of Article III courts" — the ability to "avoid unnecessary decisions and to promote voluntary resolutions where appropriate." *Ctr. for Biological Diversity v. EPA*, 56 F.4th 55, 71 (D.C. Cir. 2022). Holding in abeyance challenges to a rule undergoing reconsideration also eliminates the risk of the Court issuing an advisory opinion about the legality of an agency rule that never takes effect.

Examples of courts holding cases in similar circumstances abound. *See, e.g., Utah ex rel. Cox v. EPA*, 2025 WL 1354371, at *3 (D.C. Cir. May 2, 2025)

---

[5] Third Report and Order, Order on Reconsideration, and Fifth Further Notice of Proposed Rulemaking, *Rates for Interstate Inmate Calling Services*, 36 FCC Rcd 9519 (2021) ("*2021 IPCS Order*").

5

(per curiam); *Northpoint Tech., Ltd. v. FCC*, No. 02-1194 (D.C. Cir. Aug. 29, 2002); *cf. Mississippi v. EPA*, 744 F.3d 1334, 1341 (D.C. Cir. 2013) (per curiam) (noting case had previously been held "in abeyance to allow the agency" to reconsider the challenged rule). In some cases, as here, the agency's reconsideration followed a change in administration, with the court abating the case while new agency leadership reconsidered the challenged rule. *See Molak v. FCC*, No. 23-60641 (5th Cir. July 10, 2025);[6] *Cal. Pub. Utils. Comm'n v. FCC*, No. 21-1016 (D.C. Cir. Apr. 8, 2021); *U.S. Telecom Ass'n v. FCC*, No. 15-1414 (D.C. Cir. Feb. 21, 2017). The D.C. Circuit recently granted EPA's opposed motion to hold a case in abeyance — which was fully briefed and calendared for oral argument — because the current EPA sought to revisit and reconsider the challenged rule. *See Ethylene Oxide Sterilization Ass'n, Inc. v. EPA*, No. 24-1180 (D.C. Cir. Apr. 1, 2025).

This Court should follow that same approach and grant Respondents' motion for abeyance. Nearly all the issues that Petitioners raise involve rules that the *Waiver Order* puts on hold: namely, the rate caps (and the costs of safety and security measures IPCS providers can recover through their regulated rates) and the prohibition on site commissions. A ruling on the legality of those delayed rules

---

[6] In *Molak*, as here, the FCC sought the stay because the "newly constituted Commission [was] reevaluating" the challenged ruling. Joint Motion to Hold Case in Abeyance at 1, *Molak v. FCC*, No. 23-60641 (5th Cir. July 9, 2025).

6

would likely be advisory, as the FCC is revisiting those decisions and will likely adopt new and different rules. In addition, while the *Waiver Order* does not alter the ban on separate ancillary charges or the alternative pricing rule, those issues are before the FCC in pending petitions for reconsideration.[7] Abeyance is warranted as to the challenges to those issues as well.

## CONCLUSION

The Court should grant Respondents' motion to hold this case in abeyance.

Respectfully submitted,

/s/ *Salvatore Taillefer, Jr.*
Salvatore Taillefer, Jr.
Blooston, Mordkofsky, Dickens
  & Prendergast, LLP
2120 L Street, N.W., Suite 825
Washington, D.C. 20037
(202) 828-5562
sta@bloostonlaw.com

*Counsel for Intervenor the National Sheriffs' Association*

/s/ *Scott H. Angstreich*
Scott H. Angstreich
Kellogg, Hansen, Todd,
  Figel & Frederick, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
sangstreich@kellogghansen.com

*Counsel for Petitioner and Intervenor Securus Technologies, LLC*

---

[7] *See supra* note 4 (citing HomeWAV reconsideration petition, which seeks reconsideration of both the prohibition on separate ancillary service charges and the effective date of that prohibition); Raher Petition for Reconsideration, *Incarcerated People's Communications Services*, WC Docket Nos. 23-62 & 12-375 (Oct. 15, 2024) (seeking reconsideration of the alternative pricing plan rules). A third petition for reconsideration challenging the rate caps is also pending before the FCC. *See* NCIC Correctional Services Petition for Reconsideration, *Incarcerated People's Communications Services*, WC Docket Nos. 23-62 & 12-375 (Oct. 21, 2024).

/s/ *Angela F. Collins*  
Angela F. Collins  
Cahill Gordon & Reindel LLP  
1990 K Street, N.W., Suite 950  
Washington, D.C. 20006  
(202) 862-8930  
acollins@cahill.com  

*Counsel for Intervenor Global Tel\*Link Corporation d/b/a ViaPath Technologies*

July 11, 2025

/s/ *Marcus W. Trathen*  
Marcus W. Trathen  
Brooks, Pierce, McLendon,  
   Humphrey & Leonard L.L.P.  
1700 Wells Fargo Capitol Center  
150 Fayetteville Street (27601)  
Post Office Box 1800  
Raleigh, NC 27602  
(919) 839-0300  
mtrathen@brookspierce.com  

*Counsel for Petitioner Pay Tel Communications, Inc.*

# Certificate of Compliance With Type-Volume Limit

Certificate of Compliance With Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements

1. This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 27(d)(2) and 32(f):

☑ this document contains __1,449__ words, **or**

☐ this brief uses a monospaced typeface and contains _____ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☑ this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point, **or**

☐ this document has been prepared in a monospaced typeface using _____ with _____.


(s)Scott H. Angstreich

Attorney for Securus Technologies, LLC

Dated: 07/11/2025

# CERTIFICATE OF SERVICE

I hereby certify that, on July 11, 2025, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Scott H. Angstreich*
Scott H. Angstreich
*Counsel for Securus Technologies, LLC*