# United States Court of Appeals
# For the First Circuit

---

No. 24-8028

In re: MCP 191

*(Caption Continued on Inside Cover)*

---

On Petitions for Review of a Final Order of the
Federal Communications Commission

---

**JOINT SUPPLEMENTAL BRIEF OF PETITIONERS DIRECT ACTION
FOR RIGHTS AND EQUALITY, CRIMINAL JUSTICE REFORM CLINIC,
AND PENNSYLVANIA PRISON SOCIETY**

---

Andrew Jay Schwartzman
525 Ninth Street NW, Seventh Floor
Washington, DC 20004
Telephone: (202) 241-2408
andyschwartzman@gmail.com

*Counsel for Pennsylvania Prison Society*

Jessica Ring Amunson
Arjun R. Ramamurti
Ruby C. Giaquinto
JENNER & BLOCK LLP
1099 New York Avenue NW, #900
Washington, DC, 20001
Telephone: (202) 639-6000
jamunson@jenner.com

*Counsel for Direct Action for Rights
and Equality*

Amanda A. Thibeault
ANGELI & CALFO LLC
121 SW Morrison St. Ste 400
Portland, OR 97204
Telephone: (971) 302-6346
amanda@angelicalfo.com

*Counsel for Criminal Justice Reform
Clinic*

No. 24-1814

DIRECT ACTION FOR RIGHTS AND EQUALITY,

Petitioner,

v.

FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES,

Respondents.

_____

No. 24-1859

CRIMINAL JUSTICE REFORM CLINIC,

Petitioner,

v.

FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES,

Respondents.

_____

No. 24-1861

PENNSYLVANIA PRISON SOCIETY,

PETITIONER,

v.

FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES,

Respondents.

_____

No. 24-1884

DIRECT ACTION FOR RIGHTS AND EQUALITY,

Petitioner,

v.

FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES,

Respondents,

SECURUS TECHNOLOGIES, LLC,

Intervenor.

_____

No. 24-1886

PENNSYLVANIA PRISON SOCIETY,

Petitioner,

v.

FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES,

Respondents,

SECURUS TECHNOLOGIES, LLC,

Intervenor.

_____

No. 24-1922

CRIMINAL JUSTICE REFORM CLINIC,

Petitioner,

v.

FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES,

Respondents,

SECURUS TECHNOLOGIES, LLC,

Intervenor.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................i

INTRODUCTION ...............................................................................1

BACKGROUND ................................................................................3

ARGUMENT ...................................................................................5

I.  PROVIDERS' CHALLENGE TO THE INCLUSION OF UNBILLED MINUTES IN THE RATE-CAP CALCULATIONS IS MOOT................................................................................7

II.  PUBLIC INTEREST PETITIONERS' CHALLENGES TO COMMUNICATIONS SECURITY SERVICES COSTS AND FACILITY COSTS REMAIN LIVE..........................................8

    A.  Public Interest Petitioners' Challenge to the Inclusion of Communications Security Services in the Lower Bounds Is Not Moot. ........................................................9

    B.  Public Interest Petitioners' Challenge Regarding Facility Costs Is Not Moot................................................12

III.  THE 2025 ORDER'S PARTIAL "SUPERSEDING" OF THE 2024 ORDER DOES NOT COMPEL MOOTNESS. ...........................13

CONCLUSION ................................................................................15

# TABLE OF AUTHORITIES

CASES

*American Clinical Laboratory Ass'n v. Becerra*, 40 F.4th 616 (D.C. Cir. 2022) ...................................................................................9

*American Freedom Defense Initiative v. WMATA*, 901 F.3d 356 (D.C. Cir. 2018) .......................................................................13

*Bayley's Campground, Inc. v. Mills*, 985 F.3d 153 (1st Cir. 2021)................5, 9, 11

*Conservation Law Foundation v. Evans*, 360 F.3d 21 (1st Cir. 2004)............6, 9, 10

*Global Tel*Link v. FCC*, 866 F.3d 397 (D.C. Cir. 2017)...................................9, 15

*Littlefield v. Mashpee Wampanoag Indian Tribe*, 951 F.3d 30 (1st Cir. 2020) ...................................................................................14

*Massachusetts v. United States Department of Health & Human Services*, 923 F.3d 209 (1st Cir. 2019) ...........................................................6, 9

*MediNatura, Inc. v. FDA*, 998 F.3d 931 (D.C. Cir. 2021)......................................14

*Moharam v. TSA*, 134 F.4th 598 (D.C. Cir. 2025) ...................................................7

*Naturist Society, Inc. v. Fillyaw*, 958 F.2d 1515 (11th Cir. 1992) .........................14

*Northeastern Florida Chapter of the Associated Gen. Contractors of America v. City of Jacksonville*, 508 U.S. 656 (1993).............................9, 10, 13

*Teledesic LLC v. FCC*, 275 F.3d 75 (D.C. Cir. 2001)...............................................8

STATUTES

Martha Wright-Reed Just and Reasonable Communications Act of 2022, Pub. L. No. 117-338, 136 Stat. 6156 (2023) ...........................................11

**ADMINISTRATIVE RULINGS**

*In re Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act*, Report and Order, Order on Reconsideration, and Further Notice of Proposed Rulemaking, WC Docket Nos. 23-62 & 12-375, FCC 25-75 (rel. Nov. 6, 2025) .............................................................................. 1, 3, 4, 5, 8, 10, 11, 13

*In re Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act*, Report and Order, Order on Reconsideration, Clarification and Waiver, and Further Notice of Proposed Rulemaking, 39 FCC Rcd 7647 (2024) ............................................. 1, 4

*In re Incarcerated People's Communications Services: Implementation of the Martha Wright-Reed Act*, Order, 40 FCC Rcd 4309 (WCB 2025) ............................................................................................ 3

**OTHER AUTHORITIES**

90 Fed. Reg. 56,013 (Dec. 5, 2025) .......................................................... 3

FCC, *Incarcerated People's Communications Services (formerly Inmate Calling Services)*, www.fcc.gov/general/ipcs (last updated Jan. 14, 2026) ...................................................................................... 7

Petition for Reconsideration of Network Communications International Corporation d/b/a NCIC Correctional Services, WC Docket Nos. 23-62 & 12-375 (FCC Oct. 21, 2024) ................................................. 4

**INTRODUCTION**

Direct Action for Rights and Equality ("DARE"), Pennsylvania Prison Society ("PPS"), and Criminal Justice Reform Clinic ("CJRC"; collectively "Public Interest Petitioners") file this supplemental brief to address the extent to which a new order of the Federal Communications Commission ("FCC" or the "Commission") moots the issues in this case.[1] In three notices to this Court, the Commission has asserted that the 2025 Order supersedes the Commission's prior rate caps governing incarcerated people's communications services ("IPCS") and "moot[s] … portions of the order under review" relevant to the treatment of only three issues: safety and security costs, facility costs, and unbilled minutes.[2] As an initial matter, Public Interest Petitioners agree with the Commission's implicit recognition that the 2025 Order does *not* moot the numerous other issues in this case—including the lawfulness of the Commission's ratesetting methodology, its prohibition of site

---

[1] *See In re Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act*, Report and Order, Order on Reconsideration, and Further Notice of Proposed Rulemaking, WC Docket Nos. 23-62 & 12-375, FCC 25-75 (rel. Nov. 6, 2025) ("2025 Order"); *See In re Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act*, Report and Order, Order on Reconsideration, Clarification and Waiver, and Further Notice of Proposed Rulemaking, 39 FCC Rcd 7647 (2024) ("2024 Order") (JA1486).

[2] FCC Notice at 1, *In re: MCP 191*, Case No. 24-8028 (1st Cir. Dec. 5, 2025), Entry ID 6770453; *see also* FCC Notice at 1, *In re: MCP 191*, Case No. 24-8028 (1st Cir. Nov. 6, 2025), Entry ID 6763653 (similar); FCC Notice at 1, *In re: MCP 191*, Case No. 24-8028 (1st Cir. Oct. 7 2025), Entry ID 6756317 (similar).

1

commissions and separate ancillary charges, its non-preemption of lower state rate caps, and its treatment of certain consumer-protection issues related to alternate pricing plans and labeling, as well as the States' challenge to the Commission's structure (addressed in Parts I, III, V.B, V.C, V.D, and V.E of the Commission's brief, respectively). And Public Interest Petitioners further agree with the Commission that the 2025 Order's reversal to exclude unbilled minutes in deriving the new rate caps moots Providers' challenge as to that issue (addressed in Part V.A of the Commission's brief).

However, Public Interest Petitioners disagree with the Commission that the 2025 Order moots Public Interest Petitioners' challenges as to safety and security costs and facility costs. The 2025 Order expressly reincorporates the 2024 Order's treatment of communications security services costs in setting higher rate caps pursuant to the same "used and useful" framework, and it continues to rely on the same infirm facility costs data to which Public Interest Petitioners have objected in adopting a separate, uniform additive of $0.02. In such circumstances, where the later agency action continues to disadvantage petitioners in fundamentally the same way as the prior action—indeed, more so than before—the challenges remain live.

Though nearly every issue remains live in this Court, the most efficient course would be for this Court to receive full briefing on the 2025 Order and decide the overlapping issues in both cases together. To that end, DARE has moved to transfer

challenges to the 2025 Order from the D.C. Circuit to this Court. No party to this proceeding has opposed that motion, which remains pending.

## BACKGROUND

The 2025 Order is the culmination of various efforts by the Commission to avoid judicial review of the 2024 Order after fully defending that order in April 2025. In July 2025, the Commission unsuccessfully moved to hold this case in abeyance based on an order of the Commission's Wireline Competition Bureau impermissibly waiving the 2024 Order's rate-cap and site-commission compliance deadlines.[3] In September 2025, the Commission unsuccessfully moved to postpone oral argument based on its stated intent to issue a new order regarding IPCS. The Commission then circulated a draft of the 2025 Order on October 7, 2025, the same day as oral argument. The Commission released the final order on November 6, 2025, and the order was published on December 5, 2025.[4]

The 2025 Order substantially increases rate caps across all rate tiers while preserving the 2024 Order's ratesetting structure and relying on the same cost data from the 2023 Mandatory Data Collection on which the 2024 Order also relied. The

---

[3] *See In re Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act*, Order, 40 FCC Rcd 4309 (WCB 2025). Public interest organizations filed an application for review of the 2025 Waiver Order, which remains pending before the Commission. *See* 2025 Order ¶ 5.

[4] *See* 90 Fed. Reg. 56,013 (Dec. 5, 2025).

2025 Order makes four primary changes based on issues arising from two sources: the further notice of proposed rulemaking accompanying the 2024 Order, and a provider's petition for reconsideration filed soon after the 2024 Order was released. *See* 2025 Order ¶ 6; 2024 Order ¶¶ 608-624 (JA1797-1804); Petition for Reconsideration of Network Communications International Corporation ("NCIC"), WC Docket Nos. 23-62 & 12-375, at 4 (FCC Oct. 21, 2024).

In particular, the 2025 Order (1) removes unbilled minutes in the rate-cap calculations, 2025 Order ¶¶ 10-18; (2) creates a separate "[e]xtremely [s]mall [j]ail" tier for jails with 0 to 49 average daily population, *id.* ¶¶ 19-27; (3) includes all seven categories of safety and security costs in the lower bounds of the zones of reasonableness, *id.* ¶¶ 28-36; and (4) adopts a separate, uniform two-cent additive for facility costs while removing facility costs from the upper bounds, *id.* ¶¶ 37-51. Those four changes "supersede the corresponding aspects of the [2024 Order]." *Id.* ¶¶ 2, 9. After recalculating lower and upper bounds based on those changes, the 2025 Order adopts interim audio and video rate caps set at the lower bounds (rounded to the nearest cent). *Id.* ¶¶ 70-76.[5] The 2025 Order then reiterates that the new interim rate caps "supersede the rate caps from [2024 Order]," *id.* ¶ 53, and are effective as of Federal Register publication, with a compliance date set for 120 days

---

[5] The Commission also applied an inflation adjustment factor of 6.73%. *Id.* ¶ 80.

after publication (April 6, 2026), *id.* ¶¶ 88-89.

Crucially, despite these recalculations, the 2025 Order does not alter the 2024 Order's basic framework for implementing the Martha Wright-Reed Act ("MWRA"), nor its treatment of numerous issues (including site commissions, ancillary service charges, and consumer-protection issues). Rather, the ratesetting framework "remains unchanged," *id.* ¶ 54, and the 2025 Order expressly "clarif[ies] that [the] revisions to the rate cap setting methodologies and rate structure continue to be based on the used and useful framework for analyzing industry costs the Commission used in the [2024 Order]," *id.* ¶ 57. In addition, 2025 Order's approach to the upper bounds "remain[s] largely identical" other than the exclusion of the estimate for facility costs, *id.* ¶¶ 58-60, and the 2025 Order's approach to the lower bounds "largely follow[s]" and "replicate[s]" the 2024 Order, *id.* ¶¶ 62, 64. Finally, the 2025 Order "continue[s] to rely on the 2023 Mandatory Data Collection and record evidence to calculate rate caps as the Commission did in the [2024 Order]." *Id.* ¶ 54.

## ARGUMENT

The 2025 Order moots only Providers' unbilled-minutes challenge addressed in Part V.A of the Commission's brief. A "case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome," such that the "court cannot give any effectual relief to the potentially prevailing party." *Bayley's Campground, Inc. v. Mills*, 985 F.3d 153, 157 (1st Cir. 2021)

(quotation marks omitted); *see also Massachusetts v. U.S. Dep't of Health & Hum. Servs.*, 923 F.3d 209, 220 (1st Cir. 2019) (similar).  However, if the "parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Massachusetts*, 923 F.3d at 220 (quotation marks omitted).  As relevant here, this Court has recognized that where subsequent regulations are "sufficiently similar" to prior regulations and can harm petitioners "in the same fundamental way," substantive challenges to those provisions are not moot.  *Id.* (citing *Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 & n.3 (1993)).  As the "parties invoking the mootness doctrine," Respondents here "bear a 'heavy' burden in attempting to establish its applicability." *Conserv. Law Found. v. Evans*, 360 F.3d 21, 24 (1st Cir. 2004) (citation omitted).

The 2025 Order plainly does not moot several central issues in this case because it makes no changes to the 2024 Order relevant to those issues.  Those issues include the lawfulness of the Commission's methodology (Part I), its prohibition on site commissions (Part III), its prohibition on other ancillary charges (Part V.B), and aspects of its consumer-protection determinations that Public Interest Petitioners have challenged (Part V.D).  The Commission's notices to this Court have never suggested that any of those issues is moot, and in some cases the Commission's website now affirmatively indicates that the 2024 Order's conclusions remain

operative.[6] As to the three issues the Commission has identified as moot, Public Interest Petitioners agree that Providers' challenge to the unbilled minutes issue is moot because the 2025 Order awards the full relief that Providers sought. But because the 2025 Order maintains and in fact worsens the 2024 Order's treatment of communications security services costs and facility costs, its "supersed[ing]" of the 2024 Order on those two points does not moot Public Interest Petitioners' challenges.

## I. PROVIDERS' CHALLENGE TO THE INCLUSION OF UNBILLED MINUTES IN THE RATE-CAP CALCULATIONS IS MOOT.

Public Interest Petitioners agree with the Commission that the challenge to the Commission's derivation of rate caps based on total minutes of use is moot. A challenge is moot where a "court can provide no effective remedy because a party has already obtained all the relief that it has sought." *Moharam v. TSA*, 134 F.4th 598, 604 (D.C. Cir. 2025) (quotation marks omitted). Thus, in analogous circumstances, the D.C. Circuit has concluded that where the "FCC revised the new rules so as to accede to the demands of [a petitioner] with respect to two issues[] …

---

[6] *See, e.g.*, FCC, *Incarcerated People's Communications Services (formerly Inmate Calling Services)*, www.fcc.gov/general/ipcs (last updated Jan. 14, 2026) ("Beginning on April 6, 2026, IPCS providers also will be required to comply with the site commission and per-minute pricing rules adopted in the 2024 IPCS Order."); *id.* ("The 2025 IPCS Order also maintained the prohibition on assessing additional charges for other services such as automated payment fees and third-party financial transaction fees.").

[that petitioner's] challenges on these two issues are therefore moot." *Teledesic LLC v. FCC*, 275 F.3d 75, 78 (D.C. Cir. 2001).

Here, the 2025 Order grants reconsideration on the question of unbilled minutes, concludes that rate caps calculated based only on billed minutes satisfies the MWRA's dual mandates, and supersedes its prior explanation to the contrary. *See* 2025 Order ¶¶ 9-18. The Commission's reversal thereby grants the Providers the complete relief they sought from this Court. *Compare* 2025 Order ¶ 18 ("We therefore use only billed minutes in calculating our interim rate caps, superseding our decision in the [2024 Order], which we find will help ensure IPCS providers are fairly compensated while still ensuring just and reasonable rates"), *with* Providers Br. 47 (arguing that "[r]ate caps that ignore the existence of free and other non-revenue-generating minutes in the marketplace cannot fairly compensate providers and are not just and reasonable," and are arbitrary). Providers' challenge, addressed in Part V.A of the Commission's brief, is therefore moot.

## II. PUBLIC INTEREST PETITIONERS' CHALLENGES TO COMMUNICATIONS SECURITY SERVICES COSTS AND FACILITY COSTS REMAIN LIVE.

Contrary to the Commission's suggestion in its notices, however, Public Interest Petitioners' challenge to communications security services costs and facility costs are not moot because the 2025 Order "disadvantages [challengers] in the same

fundamental way."[7] *Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 & n.3 (1993); *see also Global Tel*Link v. FCC*, 866 F.3d 397, 413-14 (D.C. Cir. 2017) ("*GTL*") (applying *Jacksonville* in the IPCS context). This Court has recognized that substantive challenges to agency action are not moot where the agency's revised approach is "largely an extension" of the prior framework and is based on the same data, *Evans*, 360 F.3d at 25, where "the same allegedly harmful scheme continues," *id.* at 26, or where the two sets of rules are "sufficiently similar," *Massachusetts*, 923 F.3d at 220. Those mootness exceptions apply here.

A. **Public Interest Petitioners' Challenge to the Inclusion of Communications Security Services in the Lower Bounds Is Not Moot.**

First, Public Interest Petitioners' challenge to the inclusion of communications security services in the lower bounds is not moot because the 2025 Order simply perpetuates and exacerbates the same harmful scheme while relying on the existing framework from the 2024 Order and no new data. Indeed, the 2025 Order's treatment of communications security services is not merely "similar"; it is identical. *Cf. Am. Clinical Lab'y Ass'n v. Becerra*, 40 F.4th 616, 623 (D.C. Cir. 2022)

_____

[7] By contrast, Providers' and the States' challenges regarding safety and security costs and facility costs are moot. *See* Providers Br. 41-45; States' Br. 31-37. Given the 2025 Order's decision to include all seven categories of safety and security costs and adopt a uniform rate additive, there is no further "effectual relief" this Court could order. *Bayley's Campground*, 985 F.3d at 157.

(concluding that a "challenge to an agency rule [is] not moot because the government evinced the intention to reinstitute the challenged portion of the rule" (internal quotation marks and alterations omitted). Here, no speculation is required to see that the Commission intends to reinstate the challenged action: the 2025 Order expressly "incorporate[s] and reaffirm[s] the Commission's earlier reasons for including" communications security services costs. 2025 Order ¶ 29 & n.74; *see also id.* ¶ 36 (stating that the Commission "continue[s] to include the two previously included categories"). Thus, there is "no mere risk that [the Commission] will repeat its allegedly wrongful conduct; it has already done so." *Jacksonville*, 508 U.S. at 662.

Moreover, the Commission has reincorporated communications security services costs based on the same ratesetting framework and based on the exact same data from the 2023 Mandatory Data Collection. Thus, the 2025 Order "ha[s] not excised the features of the [prior order] that [Public Interest Petitioners] challenge[]" and it is "not based on 'entirely new analysis'" (citation omitted). *Massachusetts*, 923 F.3d at 220-21. In similar circumstances, this Court had "no difficulty concluding that, where a challenged regulation continued to the extent that it is only superficially altered by a subsequent regulation, we are capable of meaningful review." *Evans*, 360 F.3d at 26 (citing examples).

Finally, this Court can still grant Public Interest Petitioners "effectual relief" because the 2025 Order did not confer the relief sought—namely, that including

communications security services costs in the lower bounds would be contrary to law and arbitrary and capricious. *Bayley's Campground*, 985 F.3d at 157. Public Interest Petitioners' fundamental contention is that, under MWRA's specification that only costs that are "necessary to provide" IPCS are recoverable, those costs serving predominantly law enforcement and surveillance purposes—rather than the benefit of IPCS consumers—are not used and useful to IPCS Consumers. Martha Wright-Reed Just and Reasonable Communications Act of 2022, Pub. L. No. 117-338, § 3(b)(2), 136 Stat. 6156, 6157 (2023); *see generally* Opening Br. 3, 26-32. Yet the 2025 Order does not reach a reasoned conclusion about what the MWRA requires or permits with respect to safety and security costs. Rather, it rests almost exclusively on the shortcomings of its data collection and categorization in deciding that all categories of costs should be included as an interim measure until better data collection can be undertaken. *See* 2025 Order ¶ 34 ("[O]ur revaluation of th[e] data in light of the record we have since developed leaves us without assurance that the Commission's approach was the best way to implement the relevant directives of the" MWRA); *id.* ¶ 36 (emphasizing the "imperfect record"). Thus, a decision by this Court interpreting "necessary to provide" in the narrow sense for which Public Interest Petitioners have advocated would grant Public Interest Petitioners "effectual relief" and would limit what the agency could include in rates going forward.

Similarly, Public Interest Petitioners argued that the Commission's treatment of communications security services costs was arbitrary and capricious because it permitted recovery of those costs in the rate caps despite recognizing some of those costs served law-enforcement purposes—a rationale that the Commission elsewhere relied on to exclude other categories of costs. Opening Br. 30-31. That the 2025 Order now includes all categories of costs in the revised rate caps does not moot Public Interest Petitioners' challenge because the proper remedy for this inconsistency across categories is not to level up and include a host of impermissible costs, but rather to level down and exclude them.

## B. Public Interest Petitioners' Challenge Regarding Facility Costs Is Not Moot.

Second, Public Interest Petitioners' challenge regarding facility costs is not moot because the Commission continues to rely upon the same decade-old data in the 2025 Order, and it continues to concede those data are unreliable.

Before this Court, Public Interest Petitioners argued that the Commission's inclusion of a two-cent "additive" for alleged "facility costs" in the upper bounds was without foundation and therefore arbitrary and capricious because there is no evidence any such costs exist and because the estimate of such costs relied almost entirely on a 2015 survey by the National Sheriffs' Association that the Commission itself found to be unreliable. Opening Br. 32-37. The 2025 Order purports to "supersede" the 2024 Order's approach by treating facility costs separately from the

rate caps and adopting a uniform two-cent additive "that may be charged on top of the newly revised per-minute rate caps." 2025 Order ¶ 9; *see generally id.* ¶¶ 37-51. But the 2025 Order places even more weight on that survey than the 2024 Order did by relying on it to increase the effective rate caps themselves (and not just the upper bounds) across all rate tiers by two cents. And the 2025 Order expressly traces its adoption of the uniform additive to the 2015 survey, noting explicitly how the 2024 Order relied upon that same survey. 2025 Order ¶ 47. The 2025 Order further acknowledges using this decade-old survey "despite outstanding questions about the reliability," and instead argues (once again) that "lack of reliable correctional facility cost data" "constrains" the Commission from "adopting a different additive today." *Id*. Nor, finally, does the fact that the 2025 Order adopts a somewhat different rate structure regarding facility costs moot the present challenge. *See, e.g.*, *Am. Freedom Defense Initiative v. WMATA*, 901 F.3d 356, 362 (D.C. Cir. 2018). Public Interest Petitioners are "disadvantage[d] … in the same fundamental way" by the uniform additive, *Jacksonville*, 508 U.S. at 662 & n.3, and their challenge is not moot.

## III.  THE 2025 ORDER'S PARTIAL "SUPERSEDING" OF THE 2024 ORDER DOES NOT COMPEL MOOTNESS.

In reaching the contrary conclusion in its notice, the Commission appears to rely on the 2025 Order's statements that the 2025 Order "superseded" the 2024 Order's discussion. *See, e.g.*, 2025 Order ¶¶ 2, 9, 29. But merely using the language of supersession does not automatically compel mootness. To be sure, "[a] lawsuit

may become moot if the challenged agency action is 'super[s]eded in full' by subsequent agency action.'" *MediNatura, Inc. v. FDA*, 998 F.3d 931, 939 n.6 (D.C. Cir. 2021) (quoting *Fund for Animals, Inc. v. Hogan*, 428 F.3d 1059, 1064 (D.C. Cir. 2005)). But, as noted, the 2025 Order did not relevantly supersede "in full" the 2024 Order's treatment of safety and security costs and facility costs. Far from it: the 2025 Order is parasitic on the same "used and useful" framework, the same approach to calculating lower and upper bounds, and even the same data. And, with respect to communications security services costs, the 2025 Order expressly cross-references and reincorporates the same analysis and same bottom-line conclusion as the 2024 Order—namely, that communications security services costs should be included. *Cf. Littlefield v. Mashpee Wampanoag Indian Tribe*, 951 F.3d 30, 35 (1st Cir. 2020) (recognizing that challenges may be moot where they "involve agency actions that specifically rescinded and superseded a prior action" but not where the "agency specifically left its prior decision in place"); *Naturist Soc'y, Inc. v. Fillyaw*, 958 F.2d 1515, 1520 (11th Cir. 1992) (noting a "superseding" regulation "moots a case only to the extent that it removes challenged features of the prior law").

To the extent the Commission is making the narrower argument that the 2025 Order's supersession means that these issues must be adjudicated only in the context of the 2025 Order, Public Interest Petitioners again disagree. The D.C. Circuit already confronted precisely this issue in precisely this context a decade ago, when

the Commission adopted the 2016 Reconsideration Order while challenges to the 2015 IPCS Order were still pending. *See GTL*, 866 F.3d at 413-14. Citing *Jacksonville*, the D.C. Circuit squarely rejected the notion that this change in position mooted the challenge to the 2015 Order's treatment of site commissions: "Although the FCC purported to change its position in the *Reconsideration Order*, that order does not moot Petitioner's challenge here. … The *Reconsideration Order* is not before us, so we cannot say whether it provides a satisfactory response to Petitioners' challenge. We will leave this for the Commission's consideration on remand." *Id.* (citing *Jacksonville*, 508 U.S. at 662); *see also id.* (characterizing *Jacksonville* as holding that "replacing the challenged law 'with one that differs only in some insignificant respect' and 'disadvantages [petitioners] in the same fundamental way' does not moot the underlying challenge'" (citation omitted)). So too here: this Court remains able to determine whether the Commission's treatment of communications security services costs and facility costs were consistent with the MWRA and were reasonably explained.

## CONCLUSION

The Court should reach the merits of all issues except the unbilled minutes issue addressed in Part V.A of the Commission's brief.

Dated: February 24, 2026

Respectfully submitted,

/s/ *Andrew Jay Schwartzman*

Andrew Jay Schwartzman
525 Ninth Street NW, Seventh Floor
Washington, DC 20004
Telephone: (202) 241-2408
andyschwartzman@gmail.com

*Counsel for Pennsylvania Prison Society*

/s/ *Arjun R. Ramamurti*

Jessica Ring Amunson
Arjun R. Ramamurti
Ruby C. Giaquinto
JENNER & BLOCK LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
jamunson@jenner.com

*Counsel for Direct Action for Rights and Equality*

/s/ *Amanda A. Thibeault*

Amanda A. Thibeault
ANGELI & CALFO LLC
121 SW Morrison St. Ste 400
Portland, OR 97204
Telephone: (971) 302-6346
amanda@angelicalfo.com

**CERTIFICATE OF COMPLIANCE**

Under Rule 27(d)(2)(A) of the Federal Rules of Appellate Procedure, I certify that this brief complies with the length limits set forth in this Court's Order of December 5, 2025, because it contains 15 pages, as counted by Microsoft Word, excluding the items that may be exempted under Federal Rule of Appellate Procedure 27(a)(2)(B).

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in 14-point Times New Roman font.

*/s/ Arjun R. Ramamurti*
Arjun R. Ramamurti

**CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2026, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Arjun R. Ramamurti*
Arjun R. Ramamurti