**No. 24-8028 (and consolidated cases)**

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

No. 24-8028

IN RE: MCP 191

(CAPTION CONTINUED ON INSIDE COVER)

On Petitions for Review of an Order of
the Federal Communications Commission

## RESPONDENTS' SUPPLEMENTAL BRIEF REGARDING MOOTNESS

| | |
|---|---|
| Omeed Assefi<br>  *Acting Assistant*<br>    *Attorney General* | D. Adam Candeub<br>  *General Counsel* |
| Robert B. Nicholson<br>Robert J. Wiggers<br>  *Attorneys* | Sarah E. Citrin<br>  *Deputy Associate General Counsel* |
| U.S. DEPARTMENT OF JUSTICE<br>ANTITRUST DIVISION<br>950 Pennsylvania Ave. NW<br>Washington, DC 20530 | Matthew J. Dunne<br>  *Counsel*<br><br>FEDERAL COMMUNICATIONS<br>  COMMISSION<br>45 L Street NE<br>Washington, DC 20554<br>(202) 418-1740<br>fcclitigation@fcc.gov |

No. 24-1814

DIRECT ACTION FOR RIGHTS AND EQUALITY,

*Petitioner*,

v.

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

*Respondents*.

No. 24-1859

CRIMINAL JUSTICE REFORM CLINIC,

*Petitioner*,

v.

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

*Respondents*.

No. 24-1860

SECURUS TECHNOLOGIES, LLC,

*Petitioner,*

GLOBAL TEL*LINK, D/B/A VIAPATH TECHNOLOGIES,

*Intervenor for Petitioners,*

v.

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

*Respondents,*

DIRECT ACTION FOR RIGHTS AND EQUALITY, INC.; PENNSYLVANIA
PRISON SOCIETY; CRIMINAL JUSTICE REFORM CLINIC; OFFICE OF
COMMUNICATION OF THE UNITED CHURCH OF CHRIST, INC.,

*Intervenors for Respondents.*

No. 24-1861

PENNSYLVANIA PRISON SOCIETY,

*Petitioner,*

v.

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

*Respondents.*

No. 24-1884

DIRECT ACTION FOR RIGHTS AND EQUALITY,

*Petitioner*,

v.

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

*Respondents*,

SECURUS TECHNOLOGIES, LLC.,

*Intervenor for Respondents.*

No. 24-1886

PENNSYLVANIA PRISON SOCIETY,

*Petitioner*,

v.

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

*Respondents*,

SECURUS TECHNOLOGIES, LLC.,

*Intervenor for Respondents.*

No. 24-1922

CRIMINAL JUSTICE REFORM CLINIC,

*Petitioner*,

v.

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

*Respondents*,

SECURUS TECHNOLOGIES, LLC.,

*Intervenor for Respondents.*

No. 24-1927

SECURUS TECHNOLOGIES, LLC,

*Petitioner*,

GLOBAL TEL\*LINK, D/B/A VIAPATH TECHNOLOGIES,

*Intervenor for Petitioners*,

v.

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

*Respondents*,

DIRECT ACTION FOR RIGHTS AND EQUALITY, INC.; PENNSYLVANIA
PRISON SOCIETY; CRIMINAL JUSTICE REFORM CLINIC; OFFICE OF
COMMUNICATION OF THE UNITED CHURCH OF CHRIST, INC.,

*Intervenors for Respondents.*

No. 24-1969

PAY TEL COMMUNICATIONS, INC.,

*Petitioner*,

GLOBAL TEL\*LINK, D/B/A VIAPATH TECHNOLOGIES,

*Intervenors for Petitioners*,

v.

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

*Respondents*,

DIRECT ACTION FOR RIGHTS AND EQUALITY, INC.; PENNSYLVANIA
PRISON SOCIETY; OFFICE OF COMMUNICATION OF THE UNITED CHURCH
OF CHRIST, INC.,

*Intervenors for Respondents.*

No. 24-2013

STATE OF INDIANA; STATE OF ARKANSAS; STATE OF ALABAMA; STATE OF FLORIDA; STATE OF GEORGIA; STATE OF IDAHO; STATE OF IOWA; STATE OF MISSOURI; STATE OF OHIO; STATE OF SOUTH CAROLINA; STATE OF SOUTH DAKOTA; STATE OF TENNESSEE; STATE OF UTAH; STATE OF VIRGINIA,

*Petitioners*,

GLOBAL TEL*LINK, D/B/A VIAPATH TECHNOLOGIES,

*Intervenor for Petitioners*,

v.

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

*Respondents*,

DIRECT ACTION FOR RIGHTS AND EQUALITY, INC.; PENNSYLVANIA PRISON SOCIETY; OFFICE OF COMMUNICATION OF THE UNITED CHURCH OF CHRIST, INC.,

*Intervenors for Respondents.*

No. 24-2061

STATE OF LOUISIANA; STATE OF MISSISSIPPI; STATE OF TEXAS; SHERIFF SID GAUTREAUX; SHERIFF BOBBY WEBRE; SHERIFF MARK WOOD; SHERIFF KEVIN COBB; LOUISIANA SHERIFFS' ASSOCIATION,

*Petitioner*,

GLOBAL TEL*LINK, D/B/A VIAPATH TECHNOLOGIES; NATIONAL SHERIFF'S ASSOCIATION,

*Intervenor for Petitioners*,

v.

FEDERAL COMMUNICATIONS COMMISSION and UNITED STATES OF AMERICA,

*Respondents*,

DIRECT ACTION FOR RIGHTS AND EQUALITY, INC.; PENNSYLVANIA PRISON SOCIETY; OFFICE OF COMMUNICATION OF THE UNITED CHURCH OF CHRIST, INC.,

*Intervenors for Respondents.*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................. xi

INTRODUCTION ............................................................................. 1

BACKGROUND .............................................................................. 2

ARGUMENT ................................................................................... 4

I. RESPONDENTS AGREE THAT ALL OF THE PROVIDERS' CHALLENGES, AND THE STATES' CHALLENGES BASED ON SAFETY AND SECURITY COSTS, ARE MOOT OR OTHERWISE SHOULD BE DISMISSED. ...................................................... 5

  A. All of the Providers' challenges are moot or have been withdrawn. ....................................................... 5

  B. The States' challenge to the treatment of safety and security costs is moot. .......................................... 7

II. RESPONDENTS AGREE THAT CERTAIN CHALLENGES ARE NOT MOOT. ........................................... 8

  A. The States' challenges to the site commission prohibition and to the constitutionality of the FCC's structure are not moot. ........................................... 8

  B. The Public Interest Petitioners' challenges regarding proposed consumer protection measures are not moot. ......... 9

III. THE PUBLIC INTEREST PETITIONERS' CHALLENGES TO CERTAIN RATE CALCULATION FACTORS ARE MOOT. ............................................ 9

  A. The challenge to the *2024 Order*'s inclusion of communications security services costs is moot. .................. 10

  B. The challenge to the inclusion of a facilities additive in the upper bound of rate cap calculations is moot. ............... 13

CONCLUSION .............................................................................. 15

Page

CERTIFICATE OF COMPLIANCE......................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Chafin v. Chafin,*
 568 U.S. 165 (2013)...................................................................4, 10

*Clean Fuels All. Am. v. EPA,*
 No. 20-1107 (D.C. Cir. Mar. 13, 2026)..............................................12

*Ctr. for Sci. in the Pub. Int. v. Regan,*
 727 F.2d 1161 (D.C. Cir. 1984).........................................................5

*Friends of Animals v. Bernhardt,*
 961 F.3d 1197 (D.C. Cir. 2020).........................................................5

*Global Tel\*Link v. FCC,*
 866 F.3d 397 (D.C. Cir. 2017) .........................................................14

*Gulf of Maine Fisherman's All. v. Daley,*
 292 F.3d 84 (1st Cir. 2002) ........................................................5, 12

*Ne. Fla. Chapter of the Assoc. Gen. Contractors of Am. v. City of
 Jacksonville,*
 508 U.S. 656 (1993)..................................................................12, 13

**Statutes**

47 U.S.C. § 276(b)(1)(A)......................................................................6

47 U.S.C. § 405(a)...............................................................................9

**Administrative Materials**

*Incarcerated People's Communications Services; Implementation of
 the Martha Wright-Reed Act,*
 39 FCC Rcd 7647 (2024) .........................................................passim

*Incarcerated People's Communications Services; Implementation of
 the Martha Wright-Reed Act,* FCC 25-75,
 2025 WL 4083599 (rel. Nov. 6, 2025) ......................................passim

# TABLE OF AUTHORITIES

## (continued)

Page(s)

**Other Materials**

Motion, *United Church of Christ Media Justice Ministry, Inc. v. FCC*, No. 25-1280 (D.C. Cir., filed Jan. 27, 2026) ............................. 4

Notice, *In Re: FCC, Incarcerated People's Communications Services*, M.C.P. No. 198 (Dec. 23 , 2025) .............................................. 4

Opposition, *United Church of Christ Media Justice Ministry, Inc. v. FCC*, No. 25-1280 (D.C. Cir., filed Feb. 6, 2026) ............................ 4

# INTRODUCTION

Respondents—the Federal Communications Commission and the United States of America—largely agree with the petitioners regarding which of their claims are now moot or should otherwise be dismissed. Our narrow area of disagreement is with a single contention of the Public Interest Petitioners, who argue that this Court should address their challenges to the FCC's treatment of communications security services costs and facilities costs to calculate rate caps in the order under review,[1] even though the Commission has now superseded those rate caps in a more recent order.[2] Because the *2025 Order* supersedes the 2024 rate caps, this Court cannot grant the Public Interest Petitioners effective relief on those claims; any statement from this Court about the agency's previous treatment of the relevant cost categories would be advisory, and the claims should be dismissed as moot.

---

[1] *Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act*, 39 FCC Rcd 7647 (2024) (*2024 Order*).

[2] *Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act*, FCC 25-75, 2025 WL 4083599 (rel. Nov. 6, 2025) (*2025 Order*) (enclosed with the FCC's letter to this Court of November 6, 2025 (Entry ID 6763653)).

The Public Interest Petitioners argue that "[t]he 2025 Order expressly reincorporates the 2024 Order's treatment of communications security services costs in setting higher rate caps." Public Interest Supp. Br. 2. But they have challenged that aspect of the *2025 Order* in their new suits against the Commission; the issues should be addressed in the context of those cases, either by the D.C. Circuit or—if that Court should grant the Public Interest Petitioners' pending transfer motion, *see infra* p. 4—by this Court.

## BACKGROUND

After adopting the *2024 Order*, the FCC continued to consider issues related to IPCS. First, the *2024 Order* included a Further Notice of Proposed Rulemaking, seeking comment on a number of issues, including whether to add an additional rate tier for very small jails, and whether to adopt a uniform additive to IPCS rate caps to account for correctional facility costs. *See 2024 Order* ¶¶ 612, 621–622.

The FCC also received a petition for administrative reconsideration of several rules in the *2024 Order*, filed by IPCS provider Network Communications International Corporation (NCIC). Among other matters, NCIC asked the Commission to reconsider its prohibition of site

commissions and the exclusion of many safety and security costs in rate setting. *See 2025 Order* ¶¶ 4, 29, 46.

Responding to the record from both the Further Notice and NCIC's petition for reconsideration, the Commission issued the *2025 Order*. *See 2025 Order* ¶ 6. Although the agency retained the prohibition of site commissions, as adopted in the *2024 Order*, it superseded the rate caps from the *2024 Order* and instead set new, higher rate caps. *See id.* ¶ 70. The Commission devised the new rate caps by making four changes to its earlier ratemaking approach: it (1) excluded unbilled minutes in calculating rate caps, *id.* ¶¶ 10–18; (2) established a new pricing tier for extremely small jails, *id.* ¶¶ 19–27; (3) included all seven categories of safety and security costs from the agency's "2023 Data Collection," including the five categories that the *2024 Order* had excluded, *id.* ¶¶ 28–36; and (4) adopted an interim rate additive of up to $0.02 per minute, in addition to the rate caps, "to account for the costs correctional facilities incur in allowing access to IPCS," *id.* ¶ 37; *see id.* ¶¶ 37–51.

The *2025 Order* was adopted on October 28, 2025, and went into effect on December 5, 2025, when notice was published in the Federal Register. 90 Fed. Reg. 56,013. Full compliance with the *2025 Order* is required beginning April 6, 2026. *Id.*

Five parties—NCIC and the four Public Interest Petitioners—petitioned for review of the *2025 Order*, all within the 10-day window for petitions to be included in a judicial lottery. *See* Notice, *In Re: FCC, Incarcerated People's Communications Services*, M.C.P. No. 198 (Dec. 23, 2025). The Judicial Panel on Multidistrict Litigation conducted a lottery and selected the D.C. Circuit. *Id.* After the cases were consolidated there, the Public Interest Petitioners moved to transfer them to this Court for consolidation with these already pending cases. Motion, *United Church of Christ Media Justice Ministry, Inc. v. FCC*, No. 25-1280 (D.C. Cir., filed Jan. 27, 2026). That transfer motion—which NCIC opposed, *see* Opposition, *United Church of Christ Media Justice Ministry, Inc. v. FCC*, No. 25-1280 (D.C. Cir., filed Feb. 6, 2026)—remains pending.

## ARGUMENT

"Article III of the Constitution restricts the power of federal courts to 'Cases' and 'Controversies.'" *Chafin v. Chafin*, 568 U.S. 165, 171 (2013). "Federal courts may not 'decide questions that cannot affect the rights of litigants in the case before them' or give 'opinion[s] advising what the law would be upon a hypothetical state of facts.'" *Id.* at 172 (alteration in original). "The promulgation of new regulations and amendment of old regulations are among…intervening events [that] can moot a challenge

to the regulation in its original form." *Gulf of Maine Fisherman's All. v. Daley*, 292 F.3d 84, 88 (1st Cir. 2002); *see Friends of Animals v. Bernhardt*, 961 F.3d 1197, 1203 (D.C. Cir. 2020) ("[W]e have recognized that the government's abandonment of a challenged regulation is just the sort of development that can moot an issue."); *Ctr. for Sci. in the Pub. Int. v. Regan*, 727 F.2d 1161, 1164 (D.C. Cir. 1984) ("[I]t is not improper for an agency to engage in new rulemaking to supersede defective rulemaking.").

## I. RESPONDENTS AGREE THAT ALL OF THE PROVIDERS' CHALLENGES, AND THE STATES' CHALLENGES BASED ON SAFETY AND SECURITY COSTS, ARE MOOT OR OTHERWISE SHOULD BE DISMISSED.

### A. All of the Providers' challenges are moot or have been withdrawn.

Securus and Pay Tel (Providers) correctly recognize that the *2025 Order* moots their challenges to the calculation of the 2024 rate caps. Providers Supp. Br. 4–6. They argued in their merits brief that the Commission, in the *2024 Order*, improperly excluded certain safety and security costs. Providers Br. 37–45. In the *2025 Order*, the Commission included those costs in the new lower bounds from which it derived the new, higher rate caps. Providers Supp. Br. 5; *2025 Order* ¶ 29. The Providers also argued in their merits brief that the agency erred by

excluding purported facility costs when setting the lower bound of the zone of reasonableness. Providers Br. 37–41. Although those costs are still not included in the lower bounds, the Commission has instead allowed them to be recovered through an interim rate additive of up to $0.02 per minute. Providers Supp. Br. 5; *2025 Order* ¶ 37. The Providers' earlier argument that the agency erred in including unbilled minutes in calculating the 2024 rate caps, Providers Br. 46–49, is moot because the Commission's new calculations exclude those minutes, Providers Supp. Br. 5; *2025 Order* ¶ 10. And as the Providers also recognize, Providers Supp. Br. 7, their earlier claim that the 2024 rate caps did not satisfy "the statutory 'fair compensation' requirement," *see* 47 U.S.C. § 276(b)(1)(A), is moot because they are no longer injured by the now-superseded rates.

The Providers separately describe challenges that have been mooted by the passage of time. Providers Supp. Br. 8–9. They argued in their merits brief that the FCC erred in its timing of the ban on ancillary charges, and in dismissing Securus's petitions for clarification and waiver. *See* Providers Br. 49–58. Respondents agree with the Providers' concession that these claims are now moot; given the April 6 deadline for full compliance with the 2025 rate caps, there is no likelihood that the

Providers could obtain any meaningful relief from this Court, even if the Court were to agree with their claims. *See* Providers Supp. Br. 7–9.

Finally, the Providers "no longer seek judicial review" of their claims challenging two aspects of the *2024 Order*: the ban on separate ancillary charges and the refusal to preempt lower state rate caps ex ante. *Id.* 11. Respondents agree that, regardless of whether these challenges are moot, dismissal is warranted where the Providers no longer wish to pursue these claims.

### B. The States' challenge to the treatment of safety and security costs is moot.

Similar to the Providers, the state petitioners and sheriffs (States) recognize that, because "[t]he 2024 safety-and-security methodology does not remain on the books," and this Court "cannot grant effectual relief as to a framework that no longer applies," "the States' challenge to the 2024-safety-and-security rate-cap methodology should be dismissed as moot." States Supp. Br. 5–6 (alterations and quotation marks omitted). Respondents agree. The States' challenge to the agency's exclusion of five categories of safety and security costs in the *2024 Order*, States Br. 19–23, 29–35, should be dismissed as moot.

## II. RESPONDENTS AGREE THAT CERTAIN CHALLENGES ARE NOT MOOT.

### A. The States' challenges to the site commission prohibition and to the constitutionality of the FCC's structure are not moot.

Respondents agree with the States (and the Public Interest Petitioners) that the States' challenge to the Commission's prohibition of site commissions, as adopted in the *2024 Order*, is not moot. The States argued in their merits brief that the FCC erred or exceeded its authority when it prohibited providers from paying site commissions and preempted state laws that require such payments. States Br. 9–19; *see 2024 Order* ¶ 245. The *2025 Order* did not disturb the *2024 Order*'s prohibitions. *See, e.g., 2025 Order* ¶ 49 (the Commission "maintain[ed the] distinction" between prohibited site commissions and used-and-useful IPCS costs incurred by facilities, which the new $0.02 rate additive will reimburse). The States' challenge to the prohibition is thus still properly before this Court.

Respondents also agree with the States (and the Public Interest Petitioners) that the *2025 Order* does not moot the States' claim that the structure of the FCC is unconstitutional. States Br. 41–45. As we have explained, Respondents' Br. 101–02, that claim is not properly before the

Court for a different reason: neither the States nor any other party raised this challenge before the Commission, and judicial review is thus barred under 47 U.S.C. § 405(a). But nothing in the *2025 Order* affects how the Court should approach this claim.

## B. The Public Interest Petitioners' challenges regarding proposed consumer protection measures are not moot.

Respondents likewise agree with the Public Interest Petitioners that their challenges to certain of the *2024 Order*'s "consumer-protection determinations" are not moot. Public Interest Supp. Br. 6. The FCC had declined proposals to set certain conditions on alternate pricing plans and to require a "consumer protection label" for required disclosures. Public Interest Br. Part II; Resp. Br. Part V.D. Because the *2025 Order* does not affect those decisions, the Public Interest Petitioners' related challenges are not moot.

## III. THE PUBLIC INTEREST PETITIONERS' CHALLENGES TO CERTAIN RATE CALCULATION FACTORS ARE MOOT.

Respondents' only disagreement with any party regarding mootness is with the Public Interest Petitioners' contention that their challenges to the Commission's treatment of communications security services costs and facility costs in the *2024 Order* "remain live." Public

Interest Supp. Br. 8; *see id.* 8–13. As we have explained, the *2025 Order* adopted rate caps that superseded the rate caps adopted in the *2024 Order*. Thus we share the positions of the Providers and the States in their supplemental briefs, *see* Providers Supp. Br. 5–6; States Supp. Br. 5–6, that any errors in the Commission's treatment of specific cost categories in the *2024 Order*, when deriving the now-superseded rate caps, are errors that this Court has no power to redress.

A. **The challenge to the *2024 Order*'s inclusion of communications security services costs is moot.**

The Public Interest Petitioners argued in their merits brief that the agency's inclusion of communications security services costs in the lower bound of the zone of reasonableness used to derive the 2024 rate caps was arbitrary and capricious. Public Interest Br. 26. But even if that were so, the resulting rates are not in effect and never will be. The FCC has calculated new rate caps, based in part on additional developments in the factual record. Because this Court cannot vacate the old rates, it is "impossible…to grant any effectual relief…to the prevailing party." *Chafin*, 568 U.S. at 172. Any opinion the Court might express on the calculation of the 2024 rate caps would be advisory.

The Public Interest Petitioners dispute this, asserting that the new and old rules are "identical" as to these costs. Public Interest Supp. Br. 9. But the *2025 Order* is based in part on a new, further-developed record. For example, the new record revealed that IPCS providers do not categorize safety and security measures "the same way the [Commission] grouped them." *2025 Order* ¶ 31 (quotation marks omitted). Moreover, some of the individual services in each category "suffered from ambiguity in function and use, as they could be classified as a law enforcement function, as a service which supported the provision of IPCS, or potentially both," while other costs could support both IPCS and unregulated service. *Id.* ¶ 32. And the Commission observed that "providers did not report their safety and security data in a uniform fashion," further complicating the task of drawing conclusions from the data. *Id.* ¶ 33. In sum, in the *2025 Order*, the FCC analyzed an expanded record and concluded that it no longer had "assurance that the Commission's [2024] approach was the best way to implement the relevant directives of the Martha Wright-Reed Act." *Id.* ¶ 34.

In these circumstances, it would be inappropriate to evaluate the merits of including one category of safety and security costs as set out in the *2024 Order*. To be sure, *2025 Order* "reaffirm[ed]" the agency's earlier

reasons for including communications security services costs. *2025 Order* ¶ 29. But the record support for the new decision is not the same as the record for the previous one. This is not a case where the agency has replaced a repealed rule "with one that differs only in some insignificant respect." *Ne. Fla. Chapter of the Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993). Instead, the agency has issued a rule "based on new circumstances and data," *Gulf of Maine*, 292 F.3d at 88—specifically, information regarding potential infirmities of the cost categorizations in the 2023 Data Collection, and concerns about the risks of reduced service due to undercompensating providers, *see 2025 Order* ¶ 29. Evaluating the Public Interest Petitioners' existing challenge to the previous rule would depend on reasoning and policy judgments that no longer represent the agency's complete approach. This claim, in the context of these consolidated cases challenging the *2024 Order*, is therefore moot. *See Clean Fuels All. Am. v. EPA*, No. 20-1107, slip op. at 7 (D.C. Cir. Mar. 13, 2026) ("Typically, when one agency action has been superseded by a subsequent one, a challenge to the original action is plainly moot." (quotation marks and citations omitted)).

**B.    The challenge to the inclusion of a facilities additive in the upper bound of rate cap calculations is moot.**

The Court should similarly recognize as moot the Public Interest Petitioners' challenge to the FCC's decision in the *2024 Order* to include a $0.02 additive in the upper bound of the zone of reasonableness to account for IPCS-related facility costs. Public Interest Br. 26; *see 2024 Order* ¶ 163. Because the *2025 Order* "exclude(s) an estimate of facility costs from the upper bound," *2025 Order* ¶ 64, and instead allows a separate additive to account for these costs, the Court cannot redress any error in the Commission's earlier treatment of facility costs, which the agency has now abandoned.

The Petitioners deny this, stating that their clients are "'disadvantage[d] in the same fundamental way'" under the *2025 Order* as before. Public Interest Supp. Br. 13 (quoting *City of Jacksonville*, 508 U.S. at 662 & n.3). But unlike *City of Jacksonville*, where a city reinstated a racial contracting preference "virtually identical to the prior ordinance's" as one option, 508 U.S. at 661, in this case, the additive has been implemented in a different manner, *see id.* n.3 (mootness where the new laws were "changed substantially"). Moreover, the parties' previous arguments were predicated in part on the Commission's inclusion of the

additive as part of the upper bound. *See* Resp. Br. 86 (no showing that the addition to the upper bound resulted in raised caps); Public Interest Br. at 36–37 (responding to same argument). Evaluating those arguments, in the context of reviewing the *2024 Order*, would have no direct effect on the validity of the *2025 Order* or the merits of the Public Interest Petitioners' petitions for review now pending in the D.C. Circuit.

*       *       *

Public Interest Petitioners apparently recognize (at Supp. Br. 14) that they will be able to challenge issues related to communications safety costs and facility costs in their petitions for review of the *2025 Order*. This emphasizes the narrowness of their disagreement with the Respondents as to mootness. The situation also stands in contrast to *Global Tel*Link v. FCC*, 866 F.3d 397, 406 (D.C. Cir. 2017), on which the Public Interest Petitioners rely (at Supp. Br. 15). There, the challenge to a newer, superseding order was stayed pending the resolution of the first case. *Id.* Unlike this case, then, it would have made little sense to leave a challenge to the older order undecided.

If the D.C. Circuit transfers the petitions for review of the *2025 Order* to this Court, and this Court consolidates the two sets of cases, this narrow disagreement on mootness will have little practical effect. But if

the cases are decided separately, it makes no sense for this Court to decide challenges to measures that the agency has altered or abandoned, in the hope that doing so might prove relevant to a later challenge of a different order before a different court.

## CONCLUSION

A majority of claims in these consolidated cases are either moot or abandoned. In view of the Commission's *2025 Order*, only three sets of claims in these cases remain live: the States' challenge to the prohibition of site commissions, their challenge to the constitutionality of the FCC's structure, and the Public Interest Petitioners' challenges regarding proposed consumer protection measures. Except as to those claims, these cases should be dismissed as moot.

Dated: March 24, 2026

Respectfully submitted,

/s/ *Matthew J. Dunne*

Omeed Assefi
  *Acting Assistant Attorney
    General*

Robert B. Nicholson
Robert J. Wiggers
  *Attorneys*

U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
950 Pennsylvania Ave. NW
Washington, DC 20530

*Counsel for Respondent
  United States of America*

D. Adam Candeub
  *General Counsel*

Sarah E. Citrin
  *Deputy Associate General Counsel*

Matthew J. Dunne
  *Counsel*

FEDERAL COMMUNICATIONS
  COMMISSION
45 L Street NE
Washington, DC 20554
(202) 418-1740
fcclitigation@fcc.gov

*Counsel for Respondent Federal
  Communications Commission*

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance With Typeface Requirements
and Type Style Requirements

1.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒ this document has been prepared in a proportionally spaced typeface using <u>Microsoft Word for Office 365</u> in <u>14-point Century Schoolbook</u>, *or*

    ☐ this document has been prepared in a monospaced spaced typeface using _____ with _____.

*/s/ Matthew J. Dunne*

Matthew J. Dunne
*Counsel for Respondent Federal
Communications Commission*
