# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

| | |
|---|---|
| IN RE: MCP 191 | No. 24-8028 |
| DIRECT ACTION FOR RIGHTS AND EQUALITY, INC., *Petitioner*, v. FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES, *Respondents*, SECURUS TECHNOLOGIES, LLC, *Intervenor (No. 24-1884)*. | Nos. 24-1814 & 24-1884 |
| CRIMINAL JUSTICE REFORM CLINIC, *Petitioner*, v. FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES, *Respondents*, SECURUS TECHNOLOGIES, LLC, *Intervenor (No. 24-1922)*. | Nos. 24-1859 & 24-1922 |
| PENNSYLVANIA PRISON SOCIETY, *Petitioner*, v. FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES, *Respondents*, SECURUS TECHNOLOGIES, LLC, *Intervenor (No. 24-1886)*. | Nos. 24-1861 & 24-1886 |

**BRIEF OF INTERVENOR SECURUS TECHNOLOGIES, LLC**
**REGARDING THE EFFECT OF THE *2025 IPCS ORDER***
**ON THE PUBLIC INTEREST PETITIONERS' CHALLENGES**

While the Public Interest Petitioners contend that none of their challenges to the FCC's *2024 IPCS Order*[1] is moot, their lead arguments on appeal — which challenge the rate caps adopted in that order — seek to redress injuries that no longer exist. Today, the rate caps the FCC adopted in the ***2021 IPCS Order***[2] apply to IPCS providers. On April 6, 2026, the rate caps the FCC adopted in the ***2025 IPCS Order***[3] will come into effect. The Public Interest Petitioners' complaints about two decisions the FCC made while setting the *2024 IPCS Order* rate caps are thus purely academic. Even if the Court agreed that the FCC erred in setting those rate caps, there would be nothing for the FCC to do on remand. Nor does the *2025 IPCS Order* incorporate the two 2024-rate-setting decisions that the Public Interest Petitioners challenged. The agency made different determinations as to both safety

---

[1] Report and Order, Order on Reconsideration, Clarification and Waiver, and Further Notice of Proposed Rulemaking, *Incarcerated People's Communications Services*, WC Docket Nos. 23-62, 12-375, FCC 24-75 (rel. July 22, 2024; modif. Aug. 26, 2024 and Oct. 2, 2024) ("*2024 IPCS Order*") (JA1486-949 (public); JA2091-581 (sealed); JA1951-52 (second errata)).

[2] Third Report and Order, Order on Reconsideration, and Fifth Further Notice of Proposed Rulemaking, *Rates for Interstate Inmate Calling Services*, 36 FCC Rcd 9519 (2021) ("*2021 IPCS Order*").

[3] Report and Order, Order on Reconsideration, and Further Notice of Proposed Rulemaking, *Incarcerated People's Communications Services*, WC Docket Nos. 23-62, 12-375, FCC 25-75 (rel. Nov. 6, 2025) ("*2025 IPCS Order*").

and security costs and facility costs in its later order, which is why the rate caps it adopts differ.  The Public Interest Petitioners' lead challenges are moot.

On top of that, each of the Public Interest Petitioners has petitioned for review of the *2025 IPCS Order*.  To the extent Public Interest Petitioners are challenging the FCC's decisions in setting the rate caps that come into effect on April 6, 2026, they must do so as part of their petitions for review of the *2025 IPCS Order*.  Right now, under the Hobbs Act, the D.C. Circuit has exclusive jurisdiction over those petitions for review.  While the petitions for review remain in that court, this Court cannot decide the lawfulness of the *2025 IPCS Order*.  And if the D.C. Circuit transfers those petitions for review to this Court, the Court should rule on the live challenges to the *2025 IPCS Order*, not the mooted challenges to the *2024 IPCS Order*.

Finally, Securus agrees that the two other challenges the Public Interest Petitioners raised to the *2024 IPCS Order* — involving alternative pricing plans and consumer protection labels — are not moot.  Securus does not object to the Public Interest Petitioners' suggestion that the Court wait to rule on those challenges until it resolves the petitions for review of the *2025 IPCS Order*, if those petitions are transferred to this Court.[4]

---

[4] The Public Interest Petitioners also take positions on the mootness of challenges that Securus and Pay Tel raised in their petitions for review of the *2024 IPCS Order*.  Responses to those contentions — and any others in the Public

While the Public Interest Petitioners largely defended the *2024 IPCS Order*, they raised two arguments about the way the FCC set its zone of reasonableness in setting the rate caps in that order. First, the Public Interest Petitioners argued that the FCC arbitrarily and capriciously included communications security costs in the lower bound of the zone of reasonableness, while it had excluded five other categories of safety and security costs from that lower bound. *See* Public Interest Pet'rs Br. 26-32. Second, the Public Interest Petitioners asserted that the FCC arbitrarily and capriciously included facility costs of $0.02 in the upper bound of its zone of reasonableness. *See id*. at 32-36. The Public Interest Petitioners also raised two secondary arguments, regarding the FCC's rules permitting alternative pricing plans and its decision not to mandate a consumer protection label. *See id.* at 37-45.

While these cases were pending, the FCC's Wireline Competition Bureau issued an order "waiv[ing] the deadlines for complying" with the rate caps in the

---

Interest Petitioners' intervenor brief regarding mootness — will appear in the reply brief that Securus and Pay Tel file.

[5] A complete discussion of the background of this action appears in Securus' and Pay Tel's principal supplemental brief. *See* Securus & Pay Tel Principal Suppl. Br. 2-4. Here, Securus addresses only those facts directly relevant to the mootness of the Public Interest Petitioners' challenges.

*2024 IPCS Order*. *Waiver Order*[6] ¶ 1.  The Public Interest Petitioners did not seek review, or a stay, of the *Waiver Order*.  The FCC then released the *2025 IPCS Order* shortly after oral argument.  As to safety and security costs, the FCC consulted "the record which has developed since the Commission adopted the *2024 IPCS Order*," *2025 IPCS Order* ¶ 29, expressed "concerns about jeopardizing access to IPCS" by "underestimat[ing] used and useful safety and security costs," *id.*, and "revise[d] the treatment of safety and security costs to include *all* such reported costs in the revised rate caps," *id.* ¶ 9 (emphasis added).  In doing so, the FCC "supersed[ed] [its] treatment of safety and security costs in the *2024 IPCS Order*."  *Id*. ¶ 29.  As to facility costs, the *2025 IPCS Order* "remove[d] from [its] rate cap calculations the costs incurred by correctional facilities" and instead "allow[ed] recovery of those costs through a separate rate additive for facility-related cost recovery," "supersed[ing]" the *2024 IPCS Order*'s treatment of that issue as well.  *Id.* ¶ 38.  The *2025 IPCS Order* did not address (or alter) the FCC's alternative pricing plan rules or its earlier decision not to adopt a consumer protection label.

---

[6] Order, *Incarcerated People's Communications Services*, 40 FCC Rcd 4309 (Wireline Comp. Bur. rel. June 30, 2025) ("*Waiver Order*").

## ARGUMENT

## I. The Public Interest Petitioners' Lead Challenges Are Moot

The Public Interest Petitioners' lead challenges to the *2024 IPCS Order* — found in Part I of their merits brief — involved the FCC's inclusion of certain safety and security costs in the lower bound of the zone of reasonableness and its inclusion of facility costs in the upper bound of that zone. As a remedy, the Public Interest Petitioners sought a "remand without vacatur" — leaving the *2024 IPCS Order* rate caps in place — so "the Commission [could] address the cost . . . issues raised herein." Public Interest Pet'rs Br. 59. Given the intervening issuance of the *Waiver Order* and the *2025 IPCS Order*, granting the Public Interest Petitioners the relief they sought regarding the zone of reasonableness the FCC calculated in the *2024 IPCS Order* would not require the FCC to revisit either the rate caps that bind IPCS providers today (due to the *Waiver Order*) or in the near future (due to the *2025 IPCS Order*).

The Public Interest Petitioners' challenges to the rate-making calculus in the *2024 IPCS Order* are therefore moot. "When, as now, a [claimant] has initial standing to bring a particular claim, a federal court is duty bound to dismiss the claim as moot if subsequent events unfold in a manner that undermines any one of the three pillars" of constitutional standing. *Ramírez v. Sánchez Ramos*, 438 F.3d 92, 100 (1st Cir. 2006). One such requirement is that a court must be able to

"redress" the alleged injury through a favorable decision. *See id.* at 97. To satisfy the redressability requirement of standing, there must be a "substantial likelihood" that the requested relief will redress the injury. *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 287 (2008).

The *2024 IPCS Order*'s rate caps will not take effect at any time. Due to the *Waiver Order*, the industry will continue operating under the 2021 interim rate caps until April 5, 2026, *see Waiver Order* ¶ 19 & n.57, with compliance with the *2025 IPCS Order* rate caps required the next day, *see 2025 IPCS Order* ¶¶ 129-130. A remand to reconsider a zone of reasonableness used to set rate caps that are not now in effect — and will never take effect — would serve no practical purpose. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423-24 (2021) ("[f]ederal courts do not possess a roving commission to publicly opine on every legal question" absent standing). As the D.C. Circuit recently held in finding moot challenges to a 2020 rule, which had been superseded by a 2022 rule, the Public Interest Petitioners cannot ask this Court to "opine on the propriety of a supposed agency 'policy' disconnected from any particular agency action." *Clean Fuels All. Am. v. EPA*, – F.4th –, 2026 WL 706511, at *3, *5 (D.C. Cir. Mar. 13, 2026).[7]

---

[7] The petitioners in *Clean Fuels Alliance* chose not to challenge the superseding rule. *See* 2026 WL 706511, at *2-3. But the Public Interest Petitioners have challenged the *2025 IPCS Order*. As explained below, this Court currently lacks jurisdiction over those challenges.

The Public Interest Petitioners are also wrong to suggest (at 13-15) that their lead arguments challenged aspects of the *2024 IPCS Order* that the *2025 IPCS Order* did not change. On the contrary, as to each, the FCC explained that the *2025 IPCS Order* superseded the way the earlier order addressed both the inclusion or exclusion of safety and security costs in the lower bound and the treatment of facilities costs. *See 2025 IPCS Order* ¶¶ 29, 38. The Public Interest Petitioners' challenges to those aspects of the *2024 IPCS Order* are therefore moot. *See Gulf of Maine Fishermen's All. v. Daley*, 292 F.3d 84, 88 (1st Cir. 2002) (holding challenge was moot even though provision was "[un]modified by subsequent" regulations, because agency "expressly reconsidered" the regulation in question).

The cases the Public Interest Petitioners cite do not call for a different result — none permits an advisory opinion on a superseded rate-setting order. In *Global Tel*Link v. FCC*, 866 F.3d 397 (D.C. Cir. 2017), the petitioners had challenged the FCC's categorical exclusion of site commission costs from its rate caps. The D.C. Circuit found that an intervening reconsideration order, which "raised the rate caps specifically to account *for a portion* of site commissions" — specifically, facility costs — did not moot that challenge. *Id*. at 413 (emphasis added). That minor change was not enough to moot the challenge to the still-effective categorical exclusion of non-facilities-costs portion of site commissions from the rate caps. *See id*. at 414.

Other cases the Public Interest Petitioners cite similarly hold that challenges

to regulations left materially *unchanged* by later-promulgated rules are not moot.

*See*, *e.g.*, *Littlefield v. Mashpee Wampanoag Indian Tribe*, 951 F.3d 30, 34-35 (1st

Cir. 2020) (case not moot because subsequent agency action "specified that it did

not 'revisit or alter' the earlier" regulation); *Massachusetts v. U.S. Dep't of Health

& Hum. Servs.*, 923 F.3d 209, 220-21 (1st Cir. 2019) (case not moot where the

challenged agency actions were only "superficially altered" by the subsequent

regulations); *Am. Freedom Def. Initiative v. WMATA*, 901 F.3d 356, 362 (D.C. Cir.

2018) (challenge not moot where both regulations banned the same

advertisements); *Conservation Law Found. v. Evans*, 360 F.3d 21, 25 (1st Cir.

2004) (finding no mootness where new regulation was "designed merely to

maintain the status quo" of the old regulation).[8]  But the combination of the *Waiver

Order* and the *2025 IPCS Order* have undone the rate caps in the *2024 IPCS*

---

[8] The other cases the Public Interest Petitioners cite are even further afield.
*See*, *e.g.*, *Ne. Florida Chapter of Associated Gen. Contractors v. City of
Jacksonville*, 508 U.S. 656, 662 (1993) (case not mooted by voluntary cessation
where city had "already" repeated the injurious conduct); *Am. Clinical Lab'y Ass'n
v. Becerra*, 40 F.4th 616, 623 (D.C. Cir. 2022) (case not moot because the agency
only "temporarily alter[ed]" the challenged action); *MediNatura, Inc. v. FDA*, 998
F.3d 931, 939 n.6 (D.C. Cir. 2021) (FDA's addition of products to "import alert"
list was not mooted by subsequent decision, because court could still enjoin FDA
from listing drugs on import alert list); *Bayley's Campground, Inc. v. Mills*, 985
F.3d 153, 157-58 (1st Cir. 2021) (case not moot because challenge to "self-
quarantine requirement" could recur given the changing conditions of the COVID-
19 virus); *Naturist Soc'y, Inc. v. Fillyaw*, 958 F.2d 1515, 1519 (11th Cir. 1992)
(case not moot where damages could be awarded for past injuries).

*Order*, which will never take effect.  The remand without vacatur the Public Interest Petitioners sought will not leave those rate caps in place, and the FCC will have no cause to revisit them on remand.  The Public Interest Petitioners' lead challenges are moot.

**II.     The D.C. Circuit Currently Has Exclusive Jurisdiction Over the Public Interest Petitioners' Challenges to the *2025 IPCS Order***

While the Public Interest Petitioners have challenged the FCC's decisions resulting in the rate caps in the *2025 IPCS Order*, the D.C. Circuit currently has "exclusive jurisdiction" over those challenges.  28 U.S.C. § 2342(1).[9]  Pursuant to the lottery procedure in 28 U.S.C. § 2112(a), the Judicial Panel on Multidistrict Litigation randomly selected the D.C. Circuit to hear the multiple petitions for review of the *2025 IPCS Order*.  While the Public Interest Petitioners have moved for a discretionary transfer of those cases to this Court under 28 U.S.C. § 2112(a)(5), that motion remains pending.  The D.C. Circuit thus remains the exclusive forum to hear any challenges to the *2025 IPCS Order*.  But if the D.C. Circuit were to grant that motion, this Court should resolve the Public Interest

---

[9] While the Supreme Court recently ruled that the Hobbs Act's exclusive jurisdiction provision did not prevent a federal district court from reviewing the validity of an FCC order in an enforcement action, the Court reaffirmed that "the court of appeals in a pre-enforcement challenge possesses 'exclusive jurisdiction'" over the challenge.  *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,* 606 U.S. 146, 159-60 (2025) (internal quotation marks omitted).

Petitioners' live challenges to the rate-setting decisions in the *2025 IPCS Order*, not their moot challenges to the rate-setting decisions in the *2024 IPCS Order*.

**III.    The Public Interest Petitioners' Challenges Regarding Alternative Pricing Plan Rules and Consumer Protection Labels Are Not Moot**

Public Interest Petitioners' other challenges to the *2024 IPCS Order* — found in Part II of their merits brief — involved the FCC's rules governing alternative pricing plans and its decision not to adopt a consumer protection label. The *2025 IPCS Order* did not supersede the *2024 IPCS Order*'s treatment of either issue.  As a result, Securus agrees that those issues are not moot.  Securus does not object to the Public Interest Petitioners' suggestion that, if the petitions for review of the *2025 IPCS Order* are transferred to this Court, that this Court should resolve those challenges at the same time it rules on the petitions for review of the *2025 IPCS Order*.

## CONCLUSION

This Court should hold that the Public Interest Petitioners' challenges in Part I of their merits brief are moot, while those in Part II of that brief are not.

Respectfully submitted,

/s/ *Scott H. Angstreich*

Michael H. Pryor
BROWNSTEIN HYATT FARBER
  SCHRECK, LLP
1155 F Street, N.W., Suite 1200
Washington, D.C. 20004
(202) 389-4706
mpryor@bhfs.com

Scott H. Angstreich
Justin B. Berg
Jordan R. G. González
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
sangstreich@kellogghansen.com
jberg@kellogghansen.com
jgonzalez@kellogghansen.com

*Counsel for Intervenor Securus
Technologies, LLC*

March 26, 2026

# CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Federal Rule of Appellate Procedure 32(g), that this supplemental brief complies with the page limit set by this Court, *see* Order (Dec. 11, 2025).  Excluding the portions of the brief exempted by Federal Rule of Appellate Procedure 32(f), the brief is 10 pages.

I further certify that this brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared using Microsoft Word in a proportionally spaced typeface (Times New Roman, 14 point).

/s/ *Scott H. Angstreich*
Scott H. Angstreich
*Counsel for Intervenor Securus*
*Technologies, LLC*

March 26, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 26, 2026, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Scott H. Angstreich*
Scott H. Angstreich
*Counsel for Intervenor Securus*
*Technologies, LLC*