# United States Court of Appeals
# For the First Circuit

_____

No. 24-8028
In re: MCP 191
*(Caption Continued on Inside Cover)*

_____

On Petitions for Review of a Final Order of the
Federal Communications Commission

_____

## JOINT SUPPLEMENTAL REPLY BRIEF OF PETITIONERS DIRECT ACTION FOR RIGHTS AND EQUALITY, CRIMINAL JUSTICE REFORM CLINIC, AND PENNSYLVANIA PRISON SOCIETY

_____

Andrew Jay Schwartzman
525 Ninth Street NW, Seventh Floor
Washington, DC 20004
Telephone: (202) 241-2408
andyschwartzman@gmail.com

*Counsel for Pennsylvania Prison Society*

Jessica Ring Amunson
Arjun R. Ramamurti
Ruby C. Giaquinto
JENNER & BLOCK LLP
1099 New York Avenue NW, #900
Washington, DC, 20001
Telephone: (202) 639-6000
jamunson@jenner.com

*Counsel for Direct Action for Rights and Equality*

Stephen A. Raher
4110 SE Hawthorne Blvd.
PMB #506
Portland, OR 97214
Telephone: (971) 867-2440
sraher@pdx-law.com

*Counsel for Criminal Justice Reform Clinic*

No. 24-1814
DIRECT ACTION FOR RIGHTS AND EQUALITY,

Petitioner,

v.

FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES,

Respondents.
_____

No. 24-1859

CRIMINAL JUSTICE REFORM CLINIC,

Petitioner,

v.

FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES,

Respondents.
_____

No. 24-1861

PENNSYLVANIA PRISON SOCIETY,

PETITIONER,

v.

FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES,

Respondents.
_____

No. 24-1884

DIRECT ACTION FOR RIGHTS AND EQUALITY,

Petitioner,

v.

FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES,

Respondents,

SECURUS TECHNOLOGIES, LLC,

Intervenor.
_____

No. 24-1886

PENNSYLVANIA PRISON SOCIETY,

Petitioner,

v.

FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES,

Respondents,

SECURUS TECHNOLOGIES, LLC,

Intervenor.
_____

No. 24-1922

CRIMINAL JUSTICE REFORM CLINIC,

Petitioner,

v.

FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES,

Respondents,

SECURUS TECHNOLOGIES, LLC,

Intervenor.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ...........................................................................................1

ARGUMENT ................................................................................................2

I.  PUBLIC INTEREST PETITIONERS' CHALLENGE AS TO
    COMMUNICATIONS SECURITY SERVICES COSTS IS NOT
    MOOT..................................................................................................2

II. PUBLIC INTEREST PETITIONERS' CHALLENGE AS TO
    FACILITY COSTS IS NOT MOOT. ...........................................................6

CONCLUSION .............................................................................................8

# TABLE OF AUTHORITIES

CASES

*American Maritime Ass'n v. United States*, 766 F.2d 545 (D.C. Cir. 1985) ...............................................................................................3

*Clean Fuels Alliance America v. EPA*, 169 F.4th 307 (D.C. Cir. 2026) ..............3, 7

*Conservation Law Foundation v. Evans*, 360 F.3d 21 (1st Cir. 2004)..............2, 5, 6

*Friends of Animals v. Bernhardt*, 961 F.3d 1197 (D.C. Cir. 2020)..........................6

*Global Tel\*Link v. FCC*, 866 F.3d 397 (D.C. Cir. 2017).........................................8

*Gulf of Maine Fisherman's Alliance v. Daley*, 292 F.3d 84 (1st Cir. 2002) ....................................................................................................6

*Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449 (D.C. Cir. 1998)...................4

*Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656 (1993) ................................4, 6, 7

*Union of Concerned Sci. v. NRC*, 711 F.2d 370 (D.C. Cir. 1983).....................4, 5, 8

ADMINISTRATIVE RULINGS

*In re Implementation of the Martha Wright-Reed Act*, Report and Order, Order on Reconsideration, and Further Notice of Proposed Rulemaking, WC Docket Nos. 23-62 & 12-375, FCC 25-75 (rel. Nov. 6, 2025) .......................................................................................*passim*

**INTRODUCTION**

Public Interest Petitioners largely agree with the other parties as to which issues have been mooted by the 2025 Order.[1] Public Interest Petitioners agree that the States' challenge to safety and security costs is moot because the States have received all their requested relief. *See, e.g.*, FCC Supp. Br. 5-7; Public Interest Supp. Br. 5, 7, 8-9 n.7. Public Interest Petitioners also agree that the States' challenges to the site-commission prohibition and the Commission's structure, as well as Public Interest Petitioners' challenges to the Commission's consumer-protection determinations, are not moot. *See, e.g.*, FCC Supp. Br. 8-9; Public Interest Supp. Br. 6-7; Securus Supp. Int. Br. 10. And Public Interest Petitioners further agree that the Court need not reach the issues that Providers have chosen to abandon. Providers Supp. Br. 9-11.[2]

The primary disagreement concerns Public Interest Petitioners' challenges to the Commission's treatment of communications security services costs and facility

---

[1] *See In re Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act*, Report and Order, Order on Reconsideration, and Further Notice of Proposed Rulemaking, WC Docket Nos. 23-62 & 12-375, FCC 25-75 (rel. Nov. 6, 2025) ("2025 Order").

[2] However, as set forth in Public Interest Petitioners' principal supplemental brief (at 1-2, 5-7, 13-15), and contrary to Providers' principal supplemental brief (at 6-7), Public Interest Petitioners do not believe that Providers' challenges to the Commission's (unchanged) rate-setting methodology addressed in Part I of the Commission's brief are necessarily mooted by the Commission's partially superseding order or the passage of time.

costs.  Even as to those issues, the dispute is narrow: the Commission concedes that Public Interest Petitioners can raise their objections in their challenges to the 2025 Order, and that there would be "little practical effect" to the parties' disagreement if the D.C. Circuit transfers the challenges to the 2025 Order to this Court for consolidation with these cases (as DARE has requested).  *See* FCC Supp. Br. 14. Public Interest Petitioners agree that this resolution would be most efficient, but the Commission's further suggestion that the practical difficulties of *non*-transfer somehow bear on the mootness question here, *see id.* at 14-15, is incorrect.  Because the 2025 Order expressly "incorporate[s] and reaffirm[s]" the 2024 Order's reasoning as to communications security services costs, 2025 Order ¶ 29, and continues to rely on the same challenged data as to facility costs, *id.* ¶ 47, the Court should conclude that both disputed issues are not moot.

**ARGUMENT**

**I. PUBLIC INTEREST PETITIONERS' CHALLENGE AS TO COMMUNICATIONS SECURITY SERVICES COSTS IS NOT MOOT.**

The 2025 Order does not moot Public Interest Petitioners' challenge to the inclusion of community security services costs in the lower bounds.  When a revised approach is "largely an extension" of a prior framework and "the same allegedly harmful scheme" occurs, the previous challenge is not mooted.  *Conservation Law Found. v. Evans*, 360 F.3d 21, 25-26 (1st Cir. 2004).  That standard is met here: the 2025 Order expressly reincorporates the 2024 Order's reasoning as to

2

communications security costs, adopts the very same underlying used-and-useful framework to analyze those costs, and relies on the very same data from the 2023 Mandatory Data Collection.

The Commission's contrary arguments are unpersuasive. The Commission primarily argues that the 2025 Order "superseded" the 2024 Order's rate caps. FCC Supp. Br. 1, 3, 10; *see also* Securus Supp. Int. Br. 7. But as the D.C. Circuit recently acknowledged, in some circumstances assessing whether a "superseding" agency action moots a prior challenge requires more than simply taking the agency's word for it; rather, D.C. Circuit precedent recognizes that when a new rule merely "'reaffirm[s]'" or "'basically adopt[s]'" the same approach as a previous rule, then earlier challenges can be considered "equally applicable" and are not mooted. *Clean Fuels All. Am. v. EPA*, 169 F.4th 307, 311 (D.C. Cir. 2026) (quoting *Am. Mar. Ass'n v. United States*, 766 F.2d 545, 554 n.14 (D.C. Cir. 1985)).

Here, the case for Public Interest Petitioners' legal challenge being "equally applicable" to the 2025 Order is clear. *See id.* at 312. Most obviously, the 2025 Order expressly says it "incorporate[s] and reaffirm[s] the Commission's earlier reasons for including" communications security services costs. 2025 Order ¶ 29. Those "earlier reasons" are precisely what Public Interest Petitioners have challenged as arbitrary and capricious. *Compare id.* ¶ 29 & n.74 (citing 2024 Order ¶¶ 395-397) *with* Opening Br. 27-30 (objecting to the reasoning in these paragraphs).

Moreover, the 2025 Order otherwise says nothing to indicate that the Commission's approach to this category of costs has changed in any way. *Cf. Union of Concerned Sci. v. NRC*, 711 F.2d 370, 379 (D.C. Cir. 1983) (holding an issue not moot where the prior agency conclusion "retains its vitality as a predicate to" the later agency action); *Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 459 (D.C. Cir. 1998) (holding that an "unaffected" portion of the prior order "does not become moot" merely by reason of "intervening amendments"). To the contrary, the 2025 Order's entire discussion is framed around why five *other* categories of costs that the 2024 Order excluded should in fact be included. *See, e.g.*, 2025 Order ¶ 29 ("reconsider[ing]" only the "Commission's earlier exclusion of five of the seven reported cost categories"). And the 2025 Order's reincorporation of its prior reasoning as to communications security services costs all takes place within a basic framework that "remains unchanged," *id.* ¶ 54, and that "continue[s] to be based on the used and useful framework," *id.* ¶ 57.

The effectual relief that this Court can grant therefore remains precisely what it was before. Public Interest Petitioners have always sought a remand to the agency for a reasoned explanation for its inclusion of this category of costs. Because the 2025 Order simply reiterates the agency's "earlier reasons," Public Interest Petitioners have suffered the "same fundamental" "disadvantage," and their challenge remains live. *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v.*

*City of Jacksonville*, 508 U.S. 656, 662 & n.3 (1993); *see generally* Public Interest Supp. Br. 10-11.[3]

The Commission also argues that Public Interest Petitioners' challenge as to communications security services costs is moot because the 2025 Order "is based in part on a new, further-developed record." FCC Supp. Br. 11. But that new (exceptionally thin) record has no identifiable bearing on the Commission's treatment of communications security services costs. *See Union of Concerned Sci.*, 711 F.2d at 377-78 (rejecting a similar record-based argument where the new record did not affect the prior reasoning). At best, the new record shows only that a handful of providers were confused about the Commission's safety-and-security categories in the 2023 Mandatory Data Collection. 2025 Order ¶¶ 31-33. But the Commission's awareness of those potential infirmities did not change the Commission's reliance on that data, which the 2025 Order asserts "remains the best data available." *Id.* ¶ 55. And, more to the point, the 2025 Order did not rely on this new record as an additional basis for continuing to include communications security services costs in the revised rate caps; it simply cross-referenced its prior reasoning.

Thus, this Court's decision in *Evans* is squarely on point and should control. In *Evans*, the Court considered whether the "expiration" of one framework rendered

---

[3] The critical fact that the Commission has readopted its prior reasoning refutes Securus' suggestion that Public Interest Petitioners impermissibly seek an advisory opinion or have not identified a redressable injury. *See* Securus Supp. Int. Br. 5-9.

the case moot given the adoption of a new framework "based on entirely new data." 360 F.3d at 24-25. This Court rejected that suggestion, noting that (just as here) it was unclear what the "new underlying data" was, and so the Court "cannot say that the challenged conduct will not recur or has not already recurred." *Id.* at 25-26. As *Evans* explained, the relevant test is instead whether the new order is "largely an extension" of the previous one or instead perpetuates the "same allegedly harmful scheme." *Id.* By contrast, the Commission relies on inapposite cases where an entire "Framework" had been "replaced" and was "no longer in effect," *Gulf of Maine Fisherman's Alliance v. Daley*, 292 F.3d 84, 88 (1st Cir. 2002), or where the agency "withdrew" its findings in their entirety, *Friends of Animals v. Bernhardt*, 961 F.3d 1197, 1203 (D.C. Cir. 2020). Those cases should not govern how this Court treats an agency's express decision to "incorporate and reaffirm" its prior reasoning. 2025 Order ¶ 29.

## II. PUBLIC INTEREST PETITIONERS' CHALLENGE AS TO FACILITY COSTS IS NOT MOOT.

For similar reasons, Public Interest Petitioners' facility-costs challenge also is not moot. The Commission continues to rely upon "the same decade-old data in the 2025 Order" while conceding that the data are "unreliable," Public Interest Supp. Br. 12, thereby leaving Public Interest Petitioners fundamentally disadvantaged in the same way. *Jacksonville*, 508 U.S. at 662 & n.3.

6

The Commission's primary response is, in essence, that Public Interest Petitioners' challenge is moot because the Commission has chosen to rely even *more* heavily on the 2015 NSA Study that is the source of Public Interest Petitioners' challenge. FCC Supp. Br. 13. But the fact that the Commission now uses that study to justify the additive applied directly to the rate caps (rather than merely to the upper bounds) is immaterial to the mootness analysis. As set forth in their opening brief, Public Interest Petitioners' facility-costs argument is that the Commission "cannot continue to rely on data that the agency recognizes measures the wrong thing (or nothing) and is therefore actually inaccurate." Opening Br. 36. The 2025 Order continues to rely on that data. *See* 2025 Order ¶ 47. Thus, the 2025 Order again merely "reaffirm[s]" and "basically adopt[s]" the same approach and underlying data that was the object of Public Interest Petitioners' challenge. *Clean Fuels All. Am.*, 169 F.4th at 311 (quotation marks omitted).

The Commission also attempts to distinguish *Jacksonville* on the ground that there the city reinstated a "virtually identical" racial contracting preference, whereas here "the additive has been implemented in a different manner." FCC Supp. Br. 13. But the *Jacksonville* Court recognized that the new ordinance was not identical to the previous one, acknowledging that it could injure petitioners "to a lesser degree." 508 U.S. at 662. Nevertheless, the Court still held that petitioners were disadvantaged "in the same fundamental way" and their challenge was not moot. *Id.*

Finally, the Commission has no meaningful answer to Public Interest Petitioners' invocation of *Global Tel*Link v. FCC*, 866 F.3d 397 (D.C. Cir. 2017), which recognized that the mere existence of what the Commission itself now characterizes as a "newer, superseding order" did not automatically moot challenges to the prior order. FCC Supp. Br. 14. The Commission argues that the D.C. Circuit properly decided the challenges to the older order because the challenge to the later order had been stayed pending resolution of the prior case. *Id.* But the Commission does not explain how that descriptive observation has any relevance to the formal mootness inquiry here. *Cf. Union of Concerned Sci.*, 711 F.2d at 379 (recognizing that merely because an issue "could also be resolved in a petition to review" the later order, it "does not follow that [the Court] *must* defer review").

Analogously here, if the D.C. Circuit does not grant DARE's motion to transfer the challenges to the 2025 Order to this Court, the parties may well need to determine how best to sequence parallel challenges in two different courts. But, contrary to the Commission's suggestion, FCC Supp. Br. 14-15, that practical consequence does not provide a reason to conclude that Public Interest Petitioners' challenges to the two disputed issues have been mooted.

## CONCLUSION

For the foregoing reasons, the Court should hold that none of Public Interest Petitioners' challenges to the 2024 Order is moot.

Dated: April 10, 2026

Respectfully submitted,

/s/ *Andrew Jay Schwartzman*

Andrew Jay Schwartzman
525 Ninth Street NW, Seventh Floor
Washington, DC 20004
Telephone: (202) 241-2408
andyschwartzman@gmail.com

*Counsel for Pennsylvania Prison Society*

/s/ *Arjun R. Ramamurti*

Jessica Ring Amunson
Arjun R. Ramamurti
Ruby C. Giaquinto
JENNER & BLOCK LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
jamunson@jenner.com

*Counsel for Direct Action for Rights and Equality*

/s/ *Stephen A. Raher*

Stephen A. Raher
4110 SE Hawthorne Blvd.
PMB #506
Portland, OR 97214
Telephone: (971) 867-2440
sraher@pdx-law.com

*Counsel for Criminal Justice Reform Clinic*

# CERTIFICATE OF COMPLIANCE

Under Rule 27(d)(2)(A) of the Federal Rules of Appellate Procedure, I certify that this brief complies with the length limits set forth in this Court's Order of December 5, 2025, because it contains 8 pages, as counted by Microsoft Word, excluding the items that may be exempted under Federal Rule of Appellate Procedure 27(a)(2)(B).

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in 14-point Times New Roman font.

*/s/ Arjun R. Ramamurti*
Arjun R. Ramamurti

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2026, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Arjun R. Ramamurti*
Arjun R. Ramamurti